# Lewis *v.* Lackawanna County.

*Municipalities—Classification of counties by population—Census.*

In the absence of express legislative declaration of the fact of or any other method provided by the legislature for ascertaining it, the last preceding decennial census is to be resorted to as the best evidence of the population of a county in case of classification of counties by population.

A county remains in the class in which the last census found it, until it is transferred to another class by a subsequent census. The date, as of which the census is taken, must for all purposes, be the only fixed date for determining population, although the enumeration may not be made on that date. As congress has fixed June 1 of the year in which the census is taken, as the date of the taking of the census, a county which has sufficiently increased its population since the last census, passes into the new class as of that date.

*Public officers—District attorney—Salary—Classification of counties—Census.*

A district attorney of the county of Lackawanna was elected to office on November 6, 1900. Under the laws of April 2, 1863, P. L. 249, and April 12, 1866, P. L. 103, the district attorney had been paid by fees. The Act of March 31, 1876, P. L. 13, provided that in counties which shall have less than 200,000 and more than 150,000 inhabitants, the district attorney should be paid a salary. By the census of 1900, it appeared that the population of Lackawanna county had increased from 142,088 in 1890 to 193,831 in 1900. The date of the taking of the census was fixed by act of congress as of June 1, 1900. The announcement of the population of Lackawanna county was made on November 19, 1900, in a press bulletin from the census bureau. The compensation of the district attorney under the act of 1876, was in Lackawanna county, less than that under the acts of 1863 and 1866. *Held*, that the salary of the district attorney elected on November 6, 1900, was regulated by the act of 1876, and that it was immaterial whether the candidate knew or did not know the population on or before the date of his election.

Argued Feb. 13, 1901. Appeal, No. 9, Jan. T., 1902, by defendant, from judgment of C. P. Lackawanna Co., Jan. T., 1901, No. 771, on verdict for plaintiff in case of William R. Lewis v. Lackawanna County. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Assumpsit by district attorney to recover fees.

The parties agreed upon the following facts as undisputed:

1. The plaintiff was duly elected district attorney of Lackawanna county on November 6, 1900, to serve for the term of

three years from the first Monday of January, 1901, and entered upon the duties of his office on the said first Monday of January, 1901, being January 7, 1901.

2. Between the said January 7, 1901, and January 12, 1901, upon which day this suit was brought, plaintiff performed certain services as said district attorney, and if he is entitled to compensation by way of fees, under the acts of assembly of April 2, 1863, P. L. 249, and April 12, 1866, P. L. 103, regulating fees of the district attorney in Lackawanna county, then there was due and owing to him on January 12, 1901, when this suit was brought, the sum of $120 for such services.

3. As ascertained by the census of 1890, the population of Lackawanna county was 142,088, and as ascertained by the census of 1900, the population of Lackawanna county was 193,831.

4. The census of 1900 was taken under the act of congress, which provides that the enumeration of the population shall be made as of June 1, 1900.

5. The population of Lackawanna county by the census of 1900 was first announced November 19, 1900, in a press bulletin from the census bureau in the city of Washington, D. C.

6. The average annual compensation received by the district attorney of Lackawanna county for the past ten years has exceeded the sum of $5,000, and if it is decided that the plaintiff is by law only entitled to receive compensation fixed by the act of assembly of the commonwealth of Pennsylvania, entitled " An act to carry into effect section 5 of article 14 of the constitution," etc., approved March 31, 1876, P. L. 13, the salary prescribed by said act would be a diminution of the emoluments and compensation of the plaintiff, to which he would be entitled under the acts of assembly regulating the fees of the district attorney in Lackawanna county, above referred to and which have always formed the basis of the compensation of the district attorney of Lackawanna county.

The court instructed the jury to return a verdict for plaintiff subject to the question of law reserved whether the plaintiff was entitled in law to recover.

The court in an opinion by ARCHBALD, P. J., EDWARDS, J., dissenting, entered judgment on the verdict.

*Error assigned* was in entering judgment on the verdict.

*H. A. Knapp,* of *Willard, Warren & Knapp* and *I. H. Burns,* with him *H. L. Taylor,* for appellant.—It having been decided by our highest court that the United States census is the only authority as to the population of a county, it necessarily follows that the United States statute and our own must be read together. The United States act provides that the census shall be taken as June 1, 1900. Reading the United States statute and our own together we would, in this case, have the provision, " In all counties containing a population of over 150,000 inhabitants on June 1, 1900, . . . . all fees shall belong to the county."

The court takes judicial notice of the last official census to determine the population of a county : Hawkins v. Thomas, 3 Ind. App. 409 ; Worcester Nat. Bank v. Cheney, 94 Ill. 430; Chicago & Alton R. R. Co. v. Baldridge, 177 Ill. 233.

*William Jessup Hand,* for appellee.—Since, by the census of 1890, it appeared that the population of Lackawanna county was 147,088, its classification as a county containing less than 150,000 was thereby fixed and it remained in that class until it appeared and was ascertained, through the first published result of the census of 1900, on November 19, 1900, that it had a population exceeding 150,000, whereupon, and not before, it was transferred to the class exceeding 150,000 in population : Luzerne County v. Glennon, 109 Pa. 564; Com. v. Harding, 87 Pa. 343.

So far as affecting state legislation is concerned, the date when the result of the completed federal census is first made known is the only date to be considered, and not the date on which the census is commenced, and as of which it is taken : Com. v. Harding, 87 Pa. 343.

Appellee's compensation as district attorney is fixed and determined by the laws in force as to Lackawanna county on November 6, 1900, the date of his election, and he is not affected by the salary act of 1876 coming into force as to Lackawanna county after said date, but its operation is held in abeyance as to him by article 3, section 13, of the constitution : Apple v. Crawford County, 105 Pa. 300 ; Com. v. Comrey, 149 Pa. 216 ; Carlile v. Henderson, 17 Colo. 532 ; Com. of Converse Co. v. Burns, 29 Pac. Repr. 894.

OPINION BY BEAVER, J., April 16, 1901:

The facts of this case are agreed upon. There is no dispute as to the law. The only question is as to the application of the law to the facts; or, to be more exact, as to whether the existence of a fact or the announcement of its existence shall govern in the application of the law to the plaintiff's rights.

Briefly summarized, the facts are that plaintiff was elected district attorney for the county of Lackawanna, November 6, 1900, entered upon the discharge of his duties January 7, 1901, and became entitled to certain emoluments of his office between the latter date and January 12, 1901, when this suit was brought. If the acts of assembly of April 2, 1863, P. L. 249, and April 12, 1866, P. L. 103, regulating the fees of the district attorney in Lackawanna county, shall prevail, there was due him at the date of the suit $120.

Under the census of 1890 the population of Lackawanna county was 142,088, and under the census of 1900, its population was 193,831. If the plaintiff's remuneration is the salary fixed by the 14th section of the Act of March 31, 1876, P. L. 13, to wit: $4,000 per annum, there would be a diminution in said remuneration as compared with the fees which he would otherwise receive.

It is provided in section 19 of the act of Congress, approved March 3, 1899, "that the enumeration of the population required by this act shall commence on the first day of June, 1900, and the first day of June of the year in which each succeeding enumeration shall be made and be taken as of that date." The 25th section of the same act provides, "That the director of the census is hereby authorized . . . . to print, publish and distribute from time to time bulletins and reports of the preliminary and other results of the various investigations required by this act." By section 30 of the same act, the director of the census is authorized, upon the request of the governor of any state or territory, or the chief officer of any municipal government, to furnish certain information therein prescribed; and, by the 31st section, he is authorized to provide the census office with a seal, which shall be affixed to all certificates and attestations that may be required from the census office.

The announcement of the population of Lackawanna county,

as being in excess of 150,000, was first made on November 19, 1900, in a press bulletin from the census bureau in the city of Washington.

Article 3, section 13, of the constitution of Pennsylvania, provides that " No law shall extend the term of any public officer or increase or diminish his salary or emoluments after his election or appointment." The question presented is whether the plaintiff is entitled to the emoluments of his office under the laws of 1863 and 1866, supra, or whether he is confined to the salary of $4,000, prescribed for the district attorney under the act of 1876, supra, in counties which shall have less than 250,000 and over 150,000 inhabitants.

In Luzerne County v. Glennon, 109 Pa. 564, it is said: "In Luzerne County v. Griffith, 1 Kulp, 297, this court said : ' In the absence of express legislative declaration of the fact of or any other method provided by the legislature for ascertaining it, the last preceding decennial census is to be resorted to as the best evidence of the population of a county in case of classification of counties by population.'

" In the light of existing legislation, we have no doubt but for the purposes of classification, under the various salary acts, each county must remain in the class in which the last census found it, until it is transferred to another class by a subsequent census. The United States decennial census is the only official determination of population that we now have, and the inconvenience and injustice that would necessarily arise from accepting any unofficial guide to the classification of counties for salary purposes cannot well be over-estimated."

In view of the law classifying counties for the purpose of fixing salaries of their officials, and of the interpretation put thereon by the Supreme Court in the cases above quoted, when does a county pass from one class to another, and what determines its transfer? Is it the fact of the existence of its population, as ascertained by the decennial census, or of the public announcement of such a fact? The act of Congress,. providing for the census, enacts that the enumeration shall not only be made but shall be taken, by which we understand is to be determined or held, as of June 1. The Supreme Court says that the fact must govern, that is, the county remains in the class in which the last census found it, until it is transferred to

another class by a subsequent census.   The census is the enumeration of the population, not the announcement of the result. This must necessarily be so from a variety of considerations.

The date, as of which the census is taken, must, for all purposes, be the only fixed date for determining the population, although the enumeration may not be made on that date.   So important is the question that congress has said that the date shall be fixed as of June 1, of the year in which the census is taken, although the enumeration may not be completed for days thereafter, and although a case can readily be imagined in which a recount might be desirable and necessary, and the announcement of the result delayed for months ; but whenever taken or however ascertained, the fact shall be determined as of June 1.   And why ?   Because, if it were not so, there would be endless confusion and uncertainty and no uniformity.   There are perhaps six or more counties in Pennsylvania having a population less than 250,000 and exceeding 150,000, although all of them do not pass from the one class to the other under the present census.   It is important, from every consideration, that there should be uniformity in regard to the salaries of the officers of these counties.   If, however, the contention of the plaintiff prevails, the salaries of the officials of a portion of these counties might be regulated by the provisions of the act of 1876, and the remainder by the acts governing the emoluments of their officers passed prior thereto.

The announcement of the fact is subject to many contingencies.   A recount might be necessary.   The person charged with the computation of the enumeration from the various districts of any given county might be temporarily incapacitated in the discharge of that duty.   The county in question might be accidentally omitted from the announcement either in making up the list in the census office or in transmission to the public press.   Any number of contingencies will readily suggest themselves which might necessarily delay the announcement.

The contention of the plaintiff is that, although the population of Lackawanna county was, as a matter of fact, on the 1st day of June, 193,831, inasmuch as the announcement of the fact was not made until November 19, 1900, a few days after his election as district attorney, he is, therefore, entitled to the emoluments of his office under the acts of assembly passed prior

to 1876 rather than under the salary act of that year.  It is not alleged that the plaintiff did not know what the population of Lackawanna county was at the time of his election, but whether he knew it or not, was he not bound by the fact as it then existed?  We think beyond question he was.  The enactment and publication of our laws furnishes a familiar illustration. All who are subject to the provisions of an act of assembly are bound thereby from the date of its approval, irrespective of the date of publication.

The provisions of the law relate to the salaries of other officers in counties affected thereby beside the district attorney. Suppose some of the officers elected at the same time had made inquiry of the census bureau and had ascertained by an official declaration of the director that the population of Lackawanna county was, on June 1, 1900, in excess of 150,000.  Others made no inquiry upon the subject and had no definite information thereof, until the announcement of the 19th of November. Would those who made inquiry be bound by the fact and those who made no inquiry not be bound thereby simply because they had not made inquiry and had not been informed by a semiofficial publication?  Surely there could have been and should be no difference.  It can be readily seen that the inconvenience and injustice that would necessarily arise from accepting any unofficial guide or haphazard rule as to the classification of counties for salary purposes, which the Supreme Court says cannot well be overestimated, would be equally great, if we were to accept the announcement of the population under the census rather than the fact determined thereby.  The uncertainty would be as great as the inconvenience and injustice.

To be logical, it seems to us, that the plaintiff must go a step farther in his contention and allege that not only the announcement, but his knowledge of the announcement is necessary, in order to bind him.  Why should he be bound by the announcement of the 19th of November of a fact which existed as of the 1st of June, if he never saw the announcement which is not made by law the evidence of the fact?  There is nothing in the act of congress which makes such an announcement in any legal sense official or binding.  It is presumably for the information of the public, but is not made authoritative as a

notice, so as to bind individuals, nor is it made evidence of anything for any purpose. If he is to be bound by anything but the fact, his knowledge of it, and not the announcement of it, should govern. The absurdity of such a proposition, however, is manifest upon its face.

Courts take judicial notice of the results of a census. See numerous authorities cited in Bouvier's Law Dictionary, Rawle's Revision, under the head of "Census." Of what is judicial notice to be taken? Of the fact as it exists surely and not of its announcement. When did the fact exist? The law says June 1, 1900, not November 19, when the announcement was made through the newspapers. The absurdity of any other rule becomes apparent from a very slight consideration of the consequences. The final official publication of the census of the United States will contain the announcement of the population of the several counties of this commonwealth. Nothing therein contained will probably show the time at which the announcement of the ascertainment of the population thereof was made public. How could this court, for example, take judicial notice of the fact that the population of Lancaster county was announced as of one date, of Montgomery county as of another date, and of Lackawanna county as of a third date, supposing, of course, that the announcement of these several counties was made at different dates, which is entirely possible.

From every consideration, it seems to us that the only reliable rule and the only safe practice is to determine the population of any given county or municipality for any purpose for which it is necessary to determine it as of the date fixed by law for its determination, without reference to the time at which the announcement thereof, official or semiofficial, shall be made. The assignments of error are, therefore, sustained, the judgment of the court below is reversed and judgment is now entered on the reserved point, non obstante veredicto, for the defendant.