LEATHAM v. REGER et al.

No. 3369.   Decided June 17, 1919.   (182 Pac. 187.)

1.  JUSTICES OF THE PEACE—CONSOLIDATING OFFICES OF THE JUDGES OF THE CITY COURT AND THE JUSTICES OF THE PEACE. Comp. Laws, 1917, sections 1700 and 1701, as amended by Laws 1919, chapter 34, construed as meaning that justice courts and city courts, as now existing in cities having over 50,000

population, are "united" or consolidated, and the judges of the city court, as well as the justices of the peace, are all judges of the city court, and that all of the city justices are made ex officio justices of the peace, with full power and authority to discharge their duties and functions as such. (Page 495.)

2. CONSTITUTIONAL LAW—CONSTRUCTION IN FAVOR OF CONSTITUTIONALITY. If an act is open to two interpretations or constructions, one of which creates a conflict with some constitutional provision, while the other makes the act harmonious with the Constitution, it is the duty of the courts to adopt the latter interpretation and construction. (Page 496.)

3. JUSTICES OF THE PEACE—STATUTE. Comp. Laws 1917, sections 1700-1736, as amended in Laws 1919, chapter 34, relating to city courts and justices of the peace, conforms to Const. art. 8, sections 1 and 8, and is valid. (Page 497.)

Original application by W. A. Leatham against William Reger and others for writ of mandamus.

ORDERED THAT PEREMPTORY WRIT ISSUE.

*Wm. H. Follard*, City Atty., *H. H. Smith* and *W. W. Little*, Asst. City Attys., all of Salt Lake City, for plaintiff.

*Richard Hartley*, Co. Atty., and *D. A. Skeen*, Asst. Co. Atty., both of Salt Lake City, for defendants.

FRICK, J.

This is an original application to this court by the plaintiff against the defendants for a writ of mandate. An alternative writ was duly issued to which the defendants appeared and filed both a general demurrer and an answer. In view, however, that the answer presents no question of fact, the cause was heard and submitted upon the demurrer alone, and will be determined as though no answer had been interposed.

The application is made by the plaintiff pursuant to chapter 34, Laws of Utah 1919, which chapter is both an amendment and revision of sections 1700 to 1736, both inclusive, Comp. Laws Utah 1917, and all references hereinafter made

will be to the numbers of the sections as they appear in Comp. Laws Utah 1917, but the substance of the act and the quotations herein are from the original act itself.

The plaintiff in his application in substance alleges that he is the city recorder and ex officio clerk of the city court of Salt Lake City, which city has a population of over 50,000; that the defendants Reger and Lund are the acting justices of the peace in and for Salt Lake City precinct, and the defendant, Daisy King is the clerk of said justices' courts; that the defendants Reger and Lund have in their possession and under their control all the files, papers, dockets, and indexes of said justices' courts, of which said files, papers, dockets, and indexes the plaintiff is required by the act aforesaid to take charge and for which he is made responsible; that plaintiff has duly demanded from the defendants Reger and Lund, and from said Daisy King the clerk of said justices' courts, the possession of said files, papers, dockets, and indexes, but they have, and each of them has, refused to deliver the same to the plaintiff, and said Reger and Lund also refuse to require said Daisy King, their said clerk, to deliver said files, etc., to the plaintiff.

While there is much more contained in the application, yet, in view that the demurrer is based entirely upon the contention that the act upon which the plaintiff predicates his application is void, we need not encumber this opinion with the other allegations contained in the application.

The defendants contend that at least certain portions of the act are void, for the reasons that they are in conflict with sections 1 and 8 of article 8 of our Constitution. Section 1 of said article reads as follows:

"The judicial power of the state shall be vested in the Senate sitting as a court of impeachment, in a Supreme Court, in district courts, in justices of the peace, and such other courts inferior to the Supreme Court as may be established by law."

It is contended that by that section justices' courts are creatures of the Constitution, and hence cannot be abrogated by any act of the Legislature. No one contends that courts created by the Constitution may be abrogated by legislative act, but, as we shall hereinafter see, that is not what the Legis-

lature did or attempted to do in passing the act in question. Section 8 of article 8 of the Constitution aforesaid provides:

"The Legislature shall determine the number of justices of the peace to be elected, and shall fix by law their powers, duties and compensation. The jurisdiction of justices of the peace shall be as now provided by law, but the Legislature may restrict the same."

By the express terms of that section the Legislature is permitted to exercise certain powers over justices of the peace, and the only question is: Has it transcended its powers in passing the act in question? The parts of the act which it is contended transcend the legislative power and which now constitute sections 1700 and 1701, Comp. Laws Utah 1917, read as follows:

"1700. In all cities of this state having a population of more than 7500 inhabitants there is hereby created a court to be known as the city court of —— (naming the city), and there is also created the office of city. judge, whose election, qualification, duties and term of office shall be as hereinafter provided.

"1701. At the general election to be held on Tuesday following the first Monday of November, 1920, and quadrennially thereafter, there shall be elected, in cities having a population of more than 50,000, four judges, and in cities having a population of more than 7500 but less than 50,000, one judge, to be known as judges of the city court, whose term of office shall be four years beginning at 12 o'clock noon on the first Monday of January succeeding their election, and to hold office for the period of four years, and until their successors are elected and qualified, as hereinafter stated. The said judges shall be elected . by the qualified electors of the respective cities, and under the laws and regulations governing general elections: Provided, that upon the taking effect of this act the city courts, municipal courts, the offices of city justices of the peace, and justice courts in all cities where city courts are hereby created shall be united and shall constitute the city court of such cities, the judges of which shall be ex officio justices of the peace in such cities and shall have and exercise the same jurisdiction as is provided by law for justices of the peace throughout the State, the municipal judge in cities having municipal courts and the justices of the peace in cities having a population of over 50,000, now holding office shall become the city court judges respectively, and shall retain such offices until the first Monday in January, 1921, or until their successors are duly elected and qualified as provided herein, and shall have the same jurisdiction, powers and duties as judges of city courts and shall be paid the same salaries: Provided, that in all other cities where city courts are herein

created the mayor, by and with the consent of the city commissioners, shall appoint a city judge to hold office until his successor is duly elected and qualified."

It is contended that the union or consolidation applies only to the courts in cities having over 7,500 and less than 50,000 population, for the reason that the language is limited to courts "hereby created." It seems to us, however, that what is meant is that the justices' courts and the city courts as now existing in cities having over 50,000 population are "united" or consolidated, and that judges of the city court as well as the justices of the peace are all judges of the city court, and that all of the city judges are made ex officio justices of the peace with full power and authority to discharge all the duties and functions of justices of the peace. While it is true that in referring to the courts mentioned in the act the words "hereby created" are used, it is also true that from a consideration of the whole act it is quite clear that the words "hereby created" were intended to apply to all of the city courts, including those in cities of more than 50,000 population as well as in the cities having more than 7,500 and less than 50,000. If such a meaning is not given to the language used, then much that is said in section 1701 cannot be reconciled with the whole tenor and purport of the act. In referring to the courts, while the restrictive term "hereby created" is used, yet it was manifestly intended to apply to all of the courts to which the act applies. To thus construe the language of the act harmonizes all of its provisions and makes it easily understood, while, if counsel's interpretation and construction is adopted, many of its provisions are inharmonious and obscure. In view of the foregoing, we are of the opinion that the Legislature did not intend nor attempt to abrogate justice of the peace courts in cities having over 50,000 population, as contended by defendants, but that what was intended was to unite and consolidate those courts with the city courts; that is, each city judge is made ex officio justice of the peace with power to discharge all the powers and duties pertaining to that office.

We can see no objection to thus uniting or consolidating

the city and the justices' courts in the several cities of this state. To do that leaves the justices' courts in cities precisely what they are elsewhere in the state, just as is stated in the act. If, therefore, any person wishes to bring an action in the justice court which is within the jurisdiction of the justice court rather than in the city court as such in any city of this state, he may do so by merely entitling his complaint and other papers "in the City Court of ———— City, Before ————, ex officio Justice of the Peace." Each judge of the city court before whom an action is commenced, as well as all others, will thus be advised that the action is not commenced in the city court as such, but is commenced before the city judge in his capacity as ex officio justice of the peace, and that all of the limitations, laws, regulations, and rules of practice applicable to actions in justices' courts, including the limited jurisdiction and right of appeal from such courts, are applicable to the case. In bringing such an action there is no more cause for confusion or misunderstanding than in bringing an action in the city court. Nor is there any legal objection in uniting the office of city judge and that of justice of the peace. The offices certainly are not incompatible and can give rise to no conflict or incongruous result. It is not an infrequent occurrence in this country that the functions of two courts are exercised by one judge. That is so well known that no examples need be referred to. Moreover, in this state for many years a precinct justice of the peace could by appointment also act as town justice, and no confusion or harm has ever resulted from one person discharging the functions of both of those offices. Again, there is hardly a state office in this state, whether of the judicial or executive department, that does not ex officio discharge the duties of some other office and at times of a number of different offices.

There is, however, still another cogent reason why the foregoing construction of the act in question should prevail. It is this: If the construction contended for by the defendants be adopted, then it is probable that some of the provisions of the act would conflict with one or more of the provisions of our Constitution. Upon the other hand,

if the construction we have adopted prevails, all of the provisions of the act are made harmonious with all of the constitutional provisions. It is elementary doctrine universally applied in this country that, if an act is open to two interpretations or constructions, one of which creates a conflict with some constitutional provision, while the other makes the act harmonious with the Constitution, it is the duty of the courts to adopt the latter interpretation and construction.

The foregoing interpretation and construction also disposes of defendants' contention that the title of the act is defective.

Counsel for both sides have cited a number of decisions which, they contend, to some extent at least, support their respective contentions. A careful examination of those cases, however, has convinced us that they have no application here, and hence we refrain from referring to any of them.

From what has been said it follows that the act conforms to the Constitution of this state,. that it is a valid law, and that therefore the defendants have failed to comply with the duty thereby imposed, and hence a peremptory writ of mandate should issue as prayed for in plaintiff's application.

It is therefore ordered that a peremptory writ of mandate issue. Costs to plaintiff.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.