(90 South. 423)

No. 24957.

## LOBRANO v. POLICE JURY OF PARISH OF PLAQUEMINES.

(Dec. 10, 1921.)

*(Syllabus by Editorial Staff.)*

1. Constitutional law ⊕⇒8—Limitation in call for constitutional convention of its powers as to certain offices held to apply only to elective or appointive offices.

Act No. 180 of 1920, calling a constitutional convention and providing (section 1, par. 4, subd. "b") that it shall not ordain or frame any article or provision whereby " * * * the terms of office of * * * any of the present * * * parochial, or municipal offices, whether elected or appointed, * * * shall be reduced or shortened, * * *" applies only to offices to which the incumbent has been elected or appointed.

2. Officers ⊕⇒30—Statute making clerks of district courts registrars of voters held not to create a separate office.

Act No. 212 of 1912, providing that the Clerks of the District Courts should be ex officio Registrars of Voters, which would be offices of trust and profit, in view of the then existing Constitution (Const. 1913, art. 170), providing that no person should hold or exercise at the same time more than one office of trust or profit, except that of justice of the peace or notary public, does not create a separate office, and the appointment of a registrar of voters by the police jury of a parish in pursuance of Const. 1921, art. 8, § 18, is not a shortening of the term of office of a parochial officer, which is forbidden by Act No. 180 of 1920, calling the convention at which the constitution was adopted and limiting its powers.

3. Officers ⊕⇒30—Definition of "ex officio."

"Ex officio" means "from office; by virtue of office; officially. A term applied to an authority derived from official character merely, not expressly conferred upon the individual, but rather annexed to the official position; also used of an act done in an official character, or a consequence of office, and without any other appointment or authority than that conferred by the office."

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Ex Officio.]

**4. Constitutional law** ☞48—**In case of doubt as to the validity of a constitutional provision, it should be held valid.**

Upon a doubtful construction of a provision of the Constitution, the doubt should be solved in favor of validity.

**5. Officers** ☞100(1)—**Statutes construed as to their provisions concerning salary.**

The compensation allowed the clerk of the district court under Act No. 212 of 1912, making him ex officio registrar of voters, is not a salary, but fees, and Const. 1921, art. 8, § 18, providing for the appointment of a registrar of voters in a parish by the police jury, does not reduce the salary of the clerk of the court within the meaning of Act No. 180 of 1920, calling a constitutional convention and prohibiting it, among other things, from reducing the salaries of parochial or municipal offices, as the word "salaries" as there used means salaries, as distinguished from fees.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Salary.]

Appeal from Twenty-Ninth Judicial District Court, Parish of Plaquemines; Leander H. Perez, Judge.

Suit by Frank J. Lobrano against the Police Jury of the Parish of Plaquemines. From judgment for plaintiff, defendant appeals. Judgment set aside, and suit dismissed.

Philip R. Livaudais, Dist. Atty., of New Orleans, for appellant.

John R. Perez, of New Orleans, for appellee.

PROVOSTY, J. The office of registrar of voters was a separate office, the incumbent of which was appointed by the Governor, when Act No. 212 of 1912 was passed, making the clerk of court ex officio registrar of voters. Said act is entitled:

"An act to provide for ex officio registrars of voters and their clerks."

Section 1 of said act reads:

"Be it enacted by the General Assembly of the state of Louisiana, that the clerk of the district court of the respective parishes of the state (the parish of Orleans excepted), shall be ex officio registrars of voters, and shall discharge all the duties imposed by existing laws upon the registrars of voters, and shall keep their offices open daily at the courthouse."

Article 8, § 18, of the Constitution provides:

"Sec. 18. There shall be a registrar of voters for the parish of Orleans, who shall be appointed by the Governor, and one for each parish in the state, which shall be appointed by the police jury or other governing authority of said parish."

The police jury of the parish of Plaquemines was about to make the appointment here provided for when the present suit was brought by the clerk of court of that parish to test the validity of this constitutional provision.

The contention is that it violates the call under which the constitutional convention met and acted, which call is contained in Act No. 180, p. 290, of 1920, and was submitted to and approved by a vote of the people and in part reads:

Section 1, par. 4. "The said convention shall have full power to frame and adopt without submission to the people a new constitution for the state; provided, however, that the said convention shall be, and is hereby prohibited from enacting, ordaining or framing any article or provision whereby:

"(a)   *   *   *

"(b) The terms of office of the General Assembly or any of the present state, district, parochial, or municipal officers, whether elected or appointed; the terms of office of the Chief Justice and associate justices of the Supreme Court and judges of the Court of Appeal, the district judges, and district attorneys throughout the state, or the municipal officers of the city of New Orleans, shall be reduced or shortened, or the salaries thereof reduced prior to the expiration of the term of office which they may be holding at the time of the adoption of a new Constitution; provided, that retention in office beyond the date of any general election in 1924 shall depend upon the provisions of such Constitution."

The respect in which this provision is said to violate the said call is that it shortens the term of the office to which the ex officio reg-

istrar of voters has been elected, and reduces his salary.

[1] In the first place, it will be noted that in its terms the said limitation upon the powers of the constitutional convention applies only to those offices to which the incumbent has been elected or appointed, and that the clerk of court has not been either appointed or elected to the office of ex officio registrar of voters, but has simply been designated by the Legislature to fill said office if such an office there be.

[2, 3] But, assuming that an officer need not have been either elected or appointed to the office to which the said call of the constitutional convention has reference, does the constitutional provision shorten the term of an office?

The solution of that question thus raised depends, naturally, upon whether the office of ex officio registrar of voters is a separate office from that of clerk of court.

The question is not free from difficulty for, the said Act No. 212 of 1912 (which we give in margin[1]) contains many expressions which would indicate that a separate office to be known as that of the ex officio registrar of voters was created by it. Thus the title reads:

ex officio registrar of voters is required to make up and furnish, for either primary, general, or special election officers, a list of voters, he shall be entitled to a compensation of one cent for each name appearing on such list.

Sec. 3. Be it further enacted, etc., that the compensation fixed by this act for ex officio registrar of voters and for his clerks shall be payable quarterly, one-half out of the state treasury, on the warrant of the ex officio registrar of voters, with certified vouchers attached, and one-half by the police jury in the parish in which he exercises his functions.

Sec. 4. Be it further enacted, etc., that the entire registration rolls, together with all applications for registration, affidavits or statements filed in connection therewith, together with all poll-books or copies of the same, or other documentary matters that may for any cause or for any reason find their way into the registration office or into the hands of the registrar of voters, or his clerks, shall become a part of the public archives of the parish; and as such shall be preserved and cared for, and shall at all times during office hours be open and subject to public inspection. And the ex officio registrar of voters shall be responsible for their care and preservation.

The public shall be at liberty to copy any of the records of said office, and upon application duly made in writing, the ex officio registrar shall at any time furnish to any person applying therefor a certified list of the registered voters of his parish, or any ward or polling precinct thereof, within a delay of not more than two days, for which list he shall be entitled to demand and receive from the applicant not more than one cent per name.

Sec. 5. Be it further enacted, etc., that the ex officio registrar of voters shall assume and be charged with full responsibility for the integrity and acts of the clerks selected and employed by him, and in the event that either the ex officio registrar or clerk be charged and convicted of falsifying or destroying any of the records of his office, or falsely or illegally registering, or refusing to register, any person, or failing to perform any of the duties imposed upon him by law, he shall be subject to a fine not exceeding one thousand dollars ($1,000.00), and imprisonment, with or without hard labor, not to exceed one year.

Sec. 6. Be it further enacted, etc., that sections sixteen (16), seventeen (17), eighteen (18), nineteen (19), twenty (20), twenty-one (21), twenty-four (24), and twenty-six (26), except that part of said section which relates to the registrar of voters for the parish of Orleans, of Act 98 of 1908, approved July 1, 1908, and all other laws contrary to or in conflict with the provisions of this act be, and the same are hereby repealed, and this act shall go into effect on and after promulgation.

---

[1] An act to provide for ex officio registrars of voters and their clerks in the parishes of the state (the parish of Orleans excepted); to define their powers and duties, to provide for the punishment for failure to perform same, or the violation of the laws relating thereto; to fix their compensation, and to repeal all laws or parts of laws in conflict with this act.

Section 1. Be it enacted by the General Assembly of the state of Louisiana, that the clerk of the district court of the respective parishes of the state (the parish of Orleans excepted), shall be ex officio registrars of voters, and shall discharge all the duties imposed by existing laws upon the registrars of voters, and shall keep their offices open daily at the courthouse.

Sec. 2. Be it further enacted, etc., that the ex officio registrar of voters shall be entitled to receive a fee of ten cents for each name that he registers in his office, and he shall be entitled to employ one clerk for such time as he is required by existing laws to open his registration offices in places of the parish other than the courthouse, and the clerk thus employed, or the registrar himself, if he should perform the duty, shall receive as compensation for his services five dollars ($5.00) a day for the time actually employed, provided that not more than one day preceding each election shall be spent at any one polling place in the parish; provided further, that whenever under the law the

"An act to provide for ex officio registrars of voters and their clerks, * * * to define their powers and duties, * * * to fix their compensation."

And section 2 reads:

"The ex officio registrar of voters shall be entitled to receive a fee of ten cents for each name that he registers in his office."

And section 3 speaks of "his clerks," and section 4 of "the registration officer," or "into the hands of the registrar of voters or his clerks," etc.

The references here, it will be observed, are to the ex officio registrar of voters, eo nomine, and to the clerks and office of the ex officio registrar of voters, not to the clerk of court or his office or clerks.

On the other hand, the sum and substance of the act was simply to transfer to the clerk of court the duties and incidental rights of compensation theretofore pertaining to the registrar of voters. No separate oath or bond was required. Plaintiff in his quality of ex officio registrar of voters has not been elected or appointed as such, and his successor in office would not be appointed, voted for, and elected as such, separately from the clerk of court.

The office of clerk of court is of constitutional creation; that of ex officio registrar of voters (if there were such a separate office) would be of statutory creation, and therefore a statutory office. If the two offices are separate offices being held by one person, the combination would be a strange one, to say the least.

18 Cyc. 1500, defines the term "ex officio" as follows:

"From office; by virtue of the office. Without any other warrant or appointment than that resulting from the holding of a particular office."

12 A. & E. Enc. of Law, p. 391, defines the term as follows:

"From office; by virtue of office; officially. A term applied to an authority derived from official character merely, not expressly conferred upon the individual, but rather annexed to the official position; also used of an act done in an official character, or a consequence of office, and without any other appointment or authority than that conferred by the office."

These definitions would indicate that no separate office was created by said Act No. 212 of 1912, but that no more was done by it than to transfer to the clerk of court the functions theretofore pertaining to the registrar of voters.

And there is a peremptory reason why that interpretation should be placed upon that act, which is that, if interpreted as having created an office separate from that of clerk of court and conferred it upon the clerk of court, it would be unconstitutional under that provision of the then existing Constitution reading:

"Art. 170. No person shall hold or exercise, at the same time, more than one office of trust or profit, except that of justice of the peace or notary public."

The office of clerk of court and registrar of voters would be offices of trust and profit.

We conclude that the said act did not create a separate office, but only transferred to the clerk of court the functions of the registrar of voters, and that consequently there has not been any shortening of a term of office.

[4] Another consideration entitled to great weight in the matter is that the question is doubtful at best, and that a provision of our Constitution is not to be held invalid upon a doubtful construction. The doubt must be solved in favor of validity.

[5] So far as concerns the question of salary, we are very clear that the compensation allowed to the clerk of court for the discharge of the duties imposed upon him by the said Act No. 212 of 1912 is not a salary, but merely fees; and we are equally clear that by the term "salaries," used in the said call of the constitutional convention, was meant salary as contradistinguish-

ed from fees. While the two terms may be more or less synonymous in many connections, they are not so as ordinarily used in connection with the compensation of an office. 34 Cyc. 1826; 18 Cyc. 462.

The judgment appealed from is therefore set aside, and the suit of plaintiff dismissed at his cost in both courts, and the police jury of Plaquemine parish is left free to proceed to discharge the duty imposed upon it by article 8, § 18, of the Constitution.