# OGDEN CITY v. PATTERSON.

No. 7823.   Decided November 20, 1952.   (250 P. 2d 570.)

See 48 C. J. S., Judges, sec. 4. Form of name designating candidate on election ballot. 18 Am. Jur., Elections, secs. 172-179; 93 A. L. R. 911.

*Paul Thatcher,* Ogden, for Ogden City.

*Clinton D. Vernon,* Atty. Gen., for State.

*Howell, Stine & Olmstead,* Ogden, for respondent.

WOLFE, Chief Justice.

Action by Ogden City for a declaratory judgment to determine whether under Sec. 20-4-2, Utah Code Annotated 1943, as amended by Chap. 35, Laws of Utah 1943, as amended by Chap. 26, Laws of Utah 1951, sec. 104-4-2, there should be one or two judges on the City Court of Ogden City, and if two judges, whether the respondent, Clyde C. Patterson, was lawfully elected a judge of that court.

There is no dispute as to the facts. The population of Ogden as determined by the official United States Census for 1940 was 43,688. Prior to May 8, 1951, the statutes of this state provided that there should be one judge on city courts in cities having a population of less than 75,000. Sec. 20-4-2, U. C. A. 1943, as amended by Chap. 35, Laws of Utah 1943. On that date there went into effect Chap. 26, Laws of Utah 1951, amending said Sec. 20-4-2 to read, so far as is pertinent here:

"At the municipal election to be held in the year 1951, and sexennially thereafter, city judges shall be elected by the qualified electors of their respective cities in the manner provided by this act. In cities having a population, *as determined by the next official census*

and each official census thereafter of 50,000 and less than 100,000 there shall be *two* city judges; * * *." (Italics added.)

In the month of April, 1950, the enumeration for the 1950 decennial federal census was made. On June 14 of that year the District Supervisor of the Census at Ogden advised the Mayor of Ogden by letter that a preliminary count revealed Ogden's population as of April 1, 1950 to be 56,908. Two months later, in August, 1950, the Director of the Census in Washington, D. C. issued a preliminary bulletin and report, which was expressly made subject to later revision, disclosing that a preliminary count of the census returns of Ogden fixed the population of that city at 56,910. Not until June 17, 1951, did the Director of the Census issue his final bulletin and report. By that report Ogden's population was stated to be 57,112.

On July 31, 1951, the respondent filed with the City Recorder a declaration of his candidacy for the office of Judge of the City Court of Ogden City, Second Division, accompanied by the required petition of one hundred electors requesting his candidacy. The incumbent city judge filed for re-election but his office was designated as Judge of the First Division. While other candidates filed against the incumbent judge, seeking election to the office of Judge of the First Division, no one filed against the respondent. Therefore, pursuant to the provisions of Chap. 26, Laws of Utah 1951, the City Recorder issued to him a certificate of election and his name did not appear upon the official judicial selection ballot used at the Municipal Election on November 6, 1951. Only the names of the candidates seeking the office of Judge of the First Division were printed on the ballot.

The appellant contends that by the provisions of Chap. 26 amending Sec. 20-4-2, only one city judge was entitled to sit on the City Court of Ogden, and thus the office which he was issued a certificate of election does not exist. It is argued that on May 8, 1951, when Chap. 26 took effect as

law, the enumeration for the 1950 census had already been made and the Directtor of the Census had issued his preliminary report and bulletin, and therefore when the Legislature in Chap. 26 authorized two judges on city courts in

"cities having a population, as determined by the *next* official census
\* \* \* of 50,000 and less than 100,000", (emphasis added)

it did not have reference to the 1950 decennial federal census, but to an official census which would be taken at some future date. Appellant refers us to Sec. 15-8- 8, U. C. A. authorizing cities to provide for the taking of a census and to Article IX, Sec. 2 of the Constitution of Utah directing the Legislature to provide for an enumeration of the inhabitants of the State in 1905, and every tenth year thereafter, which wuold make the date for taking the next state census fall in 1955. Since, the appellant asserts, it has not yet been determined by an official census *taken* after May 8, 1951, that Ogden has a population of 50,000 and less than 100,000, the provisions og Chap. 26 increasing the number of City Judges in cities of that size from one to two have no operation as yet.

In view of the fact that on May 8, 1951 when Chap. 26 took effect as law the actal enumeration of persons for the 1950 federal census had already transpired and the Director of the Census had issued a preliminary bulletin and report in August, 1950, fixing the population of Ogden at 56,910, but the final report and bulletin of the Director was still forthcoming and was not in fact issued until June 17, 1951, a determination of the merits of the contention of the appellant necessitates an ascertainment of the intention of the Legislature when it referred to the "next official census" in Chap. 26. As we have seen, the appellant argues that those quoted words mean the next census taken by federal, state or city officers pursuant to law in which the enumeration is made subsequent to May 8, 1951. On the other hand, the respondent conttends that the Legislature had reference to the next official final announcement of the

resuls of a census, which announcement occurred after May 8, 1951. The appellant relies upon cases which in effect state that a census is an enumeration of the population and not merely the sum total of the inhabitants. *Lewis* v. *Lackawanna County,* 17 Pa. Super. 25, affirmed in 200 Pa. 590, 50 A. 162; *Underwood* v. *Hickman,* 162 Tenn. 689, 39 S. W. 2d 1034.

The argument of the appellant is ingenious and persuasive, but not convincing. Bearing in mind that the Legislature was providing for the number of city judges in the several cities of this state having a city court according to the population of those cities, it is highly unlikely that it was interested in anything pertaining to the 1950 decennial census except the official final figure. In cities with a population of 150,000 or over, Chap. 26 provides for four city judges; in cities with 100,000 to 150,000 inhabitants three judges are authorized, two judges in cities ranging from 50,000 to 100,000; and one judge in other cities having city courts. Since the number of city judges in a city is determined solely by its population, the conclusion seems inescapable that the Legislature did not intend to base its classification of cities upon any figures except the final official figures released by the Director of the Census. The final figure not having been released by the Director at the time Chap. 26 was enacted or when it took effect, the 1950 census was still in futuro. On June 17, 1951, over one month after Chapt. 26 became law, the official final figure was announced, revealing the population of Ogden "as determined by the next official census" after May 8, 1951. In the important matter of determining the number of city judges in the cities of this state having city courts, the Legislature doubtless did not desire to rely upon population figures as reflected by a preliminary report which was expressly made "subject to later revision." Reliance upon anything but the official final figure could conceivably entitle a city to one more judge than would be warranted by the official final figure.

*State ex rel. Brunjes* v. *Bockelman,* Mo. Sup., 240 S. W. 209, 212 is cited by the appellant as being the only case found directly in point on the question before us, and it is claimed that said case sustains the appellant's construction of the phrase, "next official census". In that case a statute provided that on and after January 1, 1921, county prosecuting attorneys should receive a salary which was determined by the population of the county. For the purposes of the statute the population was to be determined by

"multiplying the whole number of votes cast at the last preceding presidential election by five, until after the population of such county shall have been determined by the *next decennial census of the United States.*" (Italics added.)

The Supreme Court of Missouri held that in view of the fact that the statute did not become effective until January 1, 1921, the "next decennial census of the United States" would be the 1930 census and not the census of 1920. We find nothing in the case which supports the appellant's contention in the instant case. It does not appear from the opinion of the court whether the official final figure of the 1920 census had been announced on January 1, 1921 when the statute took effect. From aught that appears, the final figure had been announced.

While it is true that Sec. 15-8-68, U. C. A. 1943, authorizes cities to take a census of their population at any time and Art IX, Sec. 2 of our state constitution dircets the Legislature to provide for an enumeration of the inhabitants of the state in 1905 and every ten years thereafter, the appellant frankly admits that no state census has been taken in the past and it does not claim that cities have ever conducted a census of their own. Viewing the situation realistically, as we must, if the announcement of the final figures of the 1950 census, which announcement was made on June 17, 1951, did not constitute the "next official census" after May 8, 1951, then those quoted words of necessity refer to the U. S. decennial census which will be

taken in 1960. If this be true, the Legislature was postponing for nine years the creation of an additional judgeship on the City Court of Ogden (Ogden being the only city in this state with a population between 50,000 and 100,000) although by the preliminary figures which had been made public the Legislature must have known that Ogden would in all likelihood fall into that class of cities in which there should be two judges. That the Legislature intended that Ogden should await nine years before an additional judge could grace its City Court, although it then was known that its population placed it within that class of cities entitling it to two judges, seem unreasonable to say the least. Such an improbable intent on the part of the Legislature will not be indulged in when an alternative reasonable interpretation exists.

Turning now to the second contention of the appellant, it is urged that even though there should be two judges on the City Court of Ogden, the respondent was not lawfully elected a judge of that court at the municipal election in 1951. As stated earlier in this opinion, the respondent was the only candidate who filed for the additional judgeship created by Chap. 26. This office was designated by the City Recorder for the purposes of election as Judge of the Second Division. When no other candidate filed within the statutory time for the office sought by the respondent, a certificate of election to the office was issued to him pursuant to that provision of Chap. 26 reading:

"* * * If only one candidate files for any specific office, such person shall forthwith be issued a certificate of election for the ensuing term by the city recorder * * *."

The name of the respondent did not appear on the official ballot used at the municipal election on November 6, 1951, but only the names of those candidates seeking election to the office of Judge of the First Division.

By Sec. 20-4-4, U. C. A. 1943, (now known as Sec. 104-4-4 of the Judicial Code, Chap. 58, Laws of Utah 1951) it is provided:

"In cities where city courts are established no justice of the peace shall be elected or appointed, and the judge or judges of the city court shall be ex officio justices of the peace for the precinct, and as such shall perform the duties of such office. As such ex officio justices of the peace they shall be the successors of the justices of the peace acting in the city where such city courts are established."

The appellant asserts that under the above statute, a city judge holds two offices: (1) city judge and (2) justice of the peace; that under Article VIII, Sec. 8, of our state constitution justices of the peace must be elected; that while the office of city judge is a legislative and not a constitutional office, the legislature has directed in Sec. 20-4-2, U. C. A. 1943, as amended by Chap. 35, Laws of Utah 1943, as amended by Chap. 26, Laws of Utah 1951, that city judges shall be elected; and that the provision of Chap. 26 quoted above authorizing city recorders to issue certificates of election to candidates having no opposition and obviating the necessity of their names appearing on the official ballot at the municipal election is regugnant to Art. IV, Secs. 2 and 8 of the Constitution of Utah guaranteeing to all citizens qualifying as to age and residence the right to vote by secret ballot. It contended that under that constitutional guarantee of suffrage the name of the respondent should have been submitted to the voters at the municipal election upon a secret ballot with a blank space provided on the ballot wherein voters may write the name of any person of their choice for that office even though such person has neither filed a declaration of candidacy, been nominated, nor his name printed on the ballot.

As an aside we note here that our general election laws provide that when a candidate is unopposed for election to a public office, his name must nevertheless appear upon the official ballot of the general election and space provided where voters may write-in the names of and thereby vote

for persons other than the candidate whose name appears there on the ballot. Secs. 25-6-5 and 25-6-20, U. C. A. 1943, as amended by Chap. 37, Laws of Utah 1947. This provision of the general election law has been held to apply to municipal elections as well. *Park* v. *Rives*, 40 Utah 47, 119 Pac. 1034. However, in view of the express provision of Chap. 26 directing the city recorder to forthwith issue certificates of election to unopposed candidates for the office of City Judge, the Legislature apparently did not intend that Secs. 25-6-5 and 25-6-20, as amended, be applicable to their election.

We are referred by the appellant to 18 Am. Jur. 307, wherein it is stated:

"In some jurisdictions it is the rule that the legislature may, by statute, prohibit the voting for a candidate whose name is not upon the official ballot, and that, where such a law has been enacted, the writing in of the name of a candidate and the erasure of the name of his opponent cannot be counted as a vote for the person whose name is so written in, notwithstanding the voter's intention may be clear. *The majority view, however, seems to be that a statute prohibiting the writing in of names of candidates is unconstitutional,* and in most states the insertion of names of candidates upon the ballot is permitted." (Italics added.)

Cases sustaining both points of view are cited in the footnotes to the above text. See also the annotations in 91 Am. St. Rep. 682; 4 Ann. Cas. 145; Ann. Cas. 1913D, 614. The adherents to the minority view justify their position under the constitutional license to the legislature to regulate the elective franchise. *Chamberlain* v. *Wood,* 15 S. D. 216, 88 N. W. 109, 56 L. R. A. 187, 91 Am. St. Rep. 674.

We deem it unnecessary to here decide which school of thought we will follow. At best, we think the requirement that the names of candidates unopposed for public office be printed upon the final election ballot and a blank space provided to write-in the names of others, ■ should be extended no further than to those public officers required by our state constitution to be elected.

Adopting this limitation there can be no question as to the lawfulness of the election of the respondent to the office of city judge since that office is wholly statutory in its creation.

The point raised by the appellant that the respondent by virtue of his office as city judge also holds the office of justice of the peace, which latter office admittedly is a constitutional elective office, is without merit. In *Foote* v. *Lake County*, 206 Ill. 185, 69 N. E. 47, 48, the statute under consideration provided that in a certain class of counties, the county treasurer should be ex officio supervisor of assessments in his county. In an action brought by the executrix of a recently deceased county treasurer to recover the reasonable value of the testator's services as supervisor of assessments, the Supreme Court of Illinois in denying the executrix's claim stated:

"We think it clear that the act of 1898 did not create a new office. The provision is that the county treasurer shall be *ex officio* supervisor of assessments in his county. The term '*ex officio*' implies that the county treasurer shall be supervisor of assessments from or by virtue of his office as county treasurer, and as appertaining to such office. His authority to act as supervisor of assessments, under the statute, is derived from his official character as county treasurer; and the duties of supervisor are annexed to his official position as a consequence thereof, without any other appointment or authority than that conferred by the office of county treasurer. By the revenue act of 1845 it was provided that the sheriff of each county should be *ex officio* the collector of taxes, and it was decided in *Wood* v. *Cook*, 31 Ill. 271, that thereby it became one of the duties of the sheriff to collect the taxes; that the law simply imposed the duties of collector upon the sheriff, and the fact he was required to give an additional bond to secure the performance of the new duties did not change the character of the office. * * * It is true that one person may, in the absence of any prohibition, hold two offices, and that the language of an act may show that such was the legislative intent. That was the case in *People* [*ex rel. Murphy*] v. *Lippincott*, 67 Ill. 333, where the court passed upon the act of January 29, 1869, requiring circuit judges to observe defects and omissions in the statute, and report the same, with their views as to amendments, and to prepare bills in conformity with such views. The duties imposed by that act were not judicial or pertaining to the office of

circuit judge, and it was held that the designation of the circuit judges as commissioners for the revision of the laws was merely *descriptio personae*. They were not required to perform such duties *ex officio*, as pertaining to the office of circuit judge, while in this case the language indicates that the new duties merely resulted from holding the office of county treasurer. The assessment and collection of taxes both relate to the revenue, and are intimately connected with each other. They are but different steps in the statutory scheme of taxation.

"There being no new office, the compensation fixed by the county board included payment for all the duties prescribed for the county treasurer as supervisor of assessments under the act of 1898."

Similarly, in *Hatfield* v. *Mingo County Court*, 80 W. Va. 165, 92 S. E. 245, 246 the court discussed the nature of an ex officio position. There the statute in question provided:

"Except in counties where the county commissioners shall appoint a sealer of weights and measures as hereinafter provided, the sheriff of the county shall be ex officio county sealer of weights and measures in each county, * * *."

Said the court in construing the statute:

"Under this statute, in the absence of an appointment of a sealer of weights and measures by the county court, there is no such officer in any given county of the state. The duties thereof are performed by the sheriff, but he is not eo nomine sealer of weights and measures. He performs the public functions that a sealer of weights and measures would perform, if there were one, by virtue of his office, but his official and legal title is sheriff, and there is no person holding the distinctive title sealer of weights and measures, nor drawing a salary as such. The duties are annexed to the office of sheriff, and the service compensated for by the emoluments of the office of sheriff. The phrase 'ex officio' is a short, convenient expression which enables the Legislature, by the use thereof, to annex the duties of one office to another, and thus dispense with the services of what is deemed an unnecessary officer. In such case it would be necessary * * * to effect the result, to set forth at length and in terms the duties transferred or annexed, if some short comprehensive expression would not suffice. In the absence of an appointment by the county court, there is neither technically nor practically a sealer of weights and measures. Nobody has the legal distinction or title, nor occupies or maintains a separate office or draws a salary, under that title."

The question whether an ex-officio post or position, imposed by statute upon the holder of a public office, is a separate and distinct public office has arisen most frequently in cases in which it has been contended that there was a violation of a constitutional prohibition against a person holding more than one public office of profit or trust at the same time. Almost uniformly it has been held that the ex-officio position is not an office within the meaning of such a prohibition, but rather an addendum of duties to an already existing public office. *Ashmore* v. *Greater Greenville Sewer District*, 211 S. C. 77, 44 S. E. 2d 88, 173 A. L. R. 397; *Powers* v. *Wiseman*, 167 Tenn. 140, 67 S. W. 2d 142; *Hancock* v. *Davidson County*, 171 Tenn. 420, 104 S. W. 2d 824; *Martin* v. *Smith*, 239 Wis. 314, 1 N. W. 2d 163, 140 A. L. R. 1063; *In re Appointment of Revisor*, 141 Wis. 592, 124 N. W. 670; *Lobrano* v. *Police Jury*, 150 La. 14, 90 So. 423; *State* v. *Somnier*, 33 La. Ann. 237; *McCullers* v. *Board of Com'rs of Wake County*, 158 N. C. 75, 73 S. E. 816, Ann. Cas. 1913D, 507; *Brigman* v. *Baley*, 213 N. C. 119, 195 S. E. 617; *Freeman* v. *Board of Com'rs of Madison County*, 217 N. C. 209, 7 S. E. 2d 354; *State ex rel. Gibbs* v. *Gordon*, 138 Fla. 312, 189 So. 437; *Whitaker* v. *Parson*, 80 Fla. 352, 86 o. 247; *Bridges* v. *Shallcross*, 6 W. Va. 562; L. R. A. 1917A, 232. Some of the above cases add the qualification, however, that the duties of the ex-officio post must be "consonant" or "consistent" with the duties of the office already held or "reasonably related" thereto. For cases holding that the ex-officio position is a separate and distinct office see *Los Angeles County* v. *Superior Court*, 17 Cal. 2d 707, 112 P. 2d 10; *Union Bank & Trust Co.* v. *Los Angeles County*, 2 Cal. App. 2d 600, 38 P. 2d 442; *State ex rel. Hennepin County* v. *Brandt*, 225 Minn. 345, 31 N. W. 2d 5; *Lindsley* v. *City and County of Denver*, 64 Colo. 444, 172 P. 707.

As noted in the paragraph of the court's opinion in *Foote* v. *Lake County* which is quoted above, and as pointed out in the case of *Conter* v. *Post*, 207 Ind. 615, 194 N. E. 153,

the language of the legislature must be scrutinized to determine whether it intended to create two offices or merely annex the duties of one office to another. In the instant case, we think it clear that the Legislature by providing in Sec. 20-4-4, U. C. A. 1943, supra, that city judges shall be ex-officio justices of the peace did not intend that city judges should hold the *office* of justice of the peace. What was intended was to annex the duties of justices of the peace to the office of the city judge. This is evident by the very language of Sec. 20-4-4:

"In cities where city courts are established no justice of the peace shall be elected or appointed, and the judge or judges of the city court shall be ex officio justices of the peace for the precinct, *and as such shall perform the duties of such office.* As such ex officio justices of the peace they shall be the *successors* of the justices of the peace acting in the city where such city courts are established." (Italics added.)

As successors to justices of the peace, city judges do not hold the office of justice of the peace. As further evidence that a city judge does not hold the office of justice of the peace, there is no provision in our code for city judges to take the oath of office as justices of the peace. See *Bridges* v. *Shallcross,* supra, and *Brigman* v. *Baley,* supra, in this regard.

*Leatham* v. *Reger,* 54 Utah 491, 182 P. 187, 188, relied upon by the appellant, is not in conflict with our holding here. In fact, that decision sustains our position here. In that case it was contended that Sec. 1701, Comp. Laws Utah 1917, as amended by Chap. 34, Laws of Utah 1919, abrogated justices' courts in cities having city courts and as such contravened Art. VIII, Secs. 1 and 8 of our state constitution which provide, respectively:

"The judicial power of the state shall be vested in the Senate sitting as a court of impeachment, in a Supreme Court, in district courts, in justices of the peace, and such other courts inferior to the Supreme Court as may be established by law."

"The Legislature shall determine the number of justices of the peace to be elected, and shall fix by law their powers, duties and compensation. The jurisdiction of justices of the peace shall be as now provided by law, but the Legislature may restrict the same."

So far as is pertinent here, Sec. 1701, as amended provided:

"* * * upon the taking effect of this Act the city courts, municipal courts, the offices of city justices of the peace, and justice courts in all cities where city courts are hereby created shall be united and shall constitute the city court of such cities, the judges of which shall be ex-officio justices of the peace in such cities and shall have and exercise the same jurisdiction as is provided by law for justices of the peace throughout the State, * * *."

This court held that the intent of Sec. 1701 as amended was not to abrogate justice of the peace courts in cities having city courts but to preserve them and to require city judges to preside over both courts. The case does not hold, however, as stated by the appellants, that a city judge holds the separate and distinct office of justice of the peace. There are two courts but only one office. The Legislature having been authorized in Art. VIII, Sec. 8, of our Constitution to determine the number of justices of the peace to be elected, may lawfully provide as it has done in Sec. 20-4-4 that in cities where city courts are established no justice of the peace shall be elected. In those cities, the city judge performs the duties of the justice of the peace, one of which duties is to preside over a justices' court, *Leatham* v. *Reger,* supra, but he does not hold the office of justice of the peace.

The judgment below is affirmed. Costs to the respondent.

WADE, McDONOUGH and CROCKETT, JJ., concur.

HENRIOD, J., concurs in the result.