McFarland, J.,
delivered the opinion of the court:
An act of the legislature was passed the 4th of December, 1869 [acts 1869-70, ch. 28], providing for a new organization of the courts for Shelby county' — two circuit and two chancery courts, and a criminal court. It provided for an election for judges to hold said courts to he held on the fourth Thursday in May, 1870.
On that day the five judges were elected, and sworn into office on the 7th and 8th of June, 1870, four of the number were still holding their office at the hearing of this cause. A vacancy occurred in the office of the second chancery court by the death of Judge Merger. This was filled by the appointment of Chancellor Scott, and after-wards by the election of Chancellor "Walker, in August, 1872. The eleventh section of the act of the 4th of December, 1869, provides “that the salaries of the judges and-chancellors of the several courts established by this act shall he the same as for the circuit judges and chancellors as established by law, each to he paid' by the state as other judges and chancellors are paid; provided, that the county court of Shelby county may appropriate a sum sufficient *511 to increase salaries of said judges and chancellors not exceeding two thousand dollars each, additional thereto.”
In July, 1870, the county- court made an appropriation in favor of each of said judges of two thousand dollars.
The allowance was subsequently repealed, again renen-acted, afterwards reduced in amount, and finally disallowed altogether by th-e court.
It is claimed by the judges that the county court has no power to rescind the order mailing the appropriation.
Several questions are presented. We can do no more at present than state our conclusions:
1. Is the eleventh section of the act of 1869, in regard to allowing idle county court to , appropriate, a sum not exceeding two thousand dollars to increase the salaries in violation of the constituion? Did the legislature have authority to delegate to. the county court the power to. increase the salaries of the judges, and to levy a tax to pay the appropriation? We think not. By the provisions of-the constiution, judges are to receive compensation for their services to be ascertained by law. Art. 6, sec. 7. The law ascertaining this compensation must be enacted' by the legislature, the only law-making power. This law-making power cannot be delegated to any other body. Dor do we think this result can be avoided by assuming that this part of the act of 1869 was in the nature of a conditional law to take effect upon the happening of the contingency — that is, upon the appropriation being made by the county court, and then stand as if the act had definitely fixed the salaries at the siim of $4,500 — that is, the regular' salary of $2,500, and the $2,000 allowed by the county court. This position we think is wholly untenable. The act does not assume to make these salaries different from the regular salary allowed other judges, but it simply leaves it to the county court to say whether they ought to have more, anid how much more, not exceeding $2,000, and to tax the people within the.county to pay it.
*512 If the question as to any part of the salary could he left to tlie discretion of the county court, it might all he left to that body, and the judge thus left at the mercy of the court so far as the question of salary is concerned. If the salary is to he ascertained hy law, then, in our opinion, the legislature must enact a law, and it cannot delegate the power to any other body, and this is what was attempted to he done hy this provision of the act.
2. We are of opinion that the county court had no power to levy a tax to pay the sums appropriated. The power of taxation is the legislative power, and this by the constitution, is vested in the general assembly. They can delegate this power only to the extent authorized by the twenty-ninth section of art. 2. This is, the legislature shall have power to authorize the several counties and incorporated towns to impose taxes for county and corporation purposes in such manner as shall he prescribed by law.
We are of opinion that the courts must determine whether or not the purpose for which the county mav he directed by the legislature to levy a tax is a county '-ur-pose, and if it be not a county purpose, the law to that extent must he declared void. If we hold that the legislature are the exclusive judges of whether or not the purpose he a county purpose, this restriction of the constitution might as well have been omitted, and the power given to the legislature to authorize the counties to impose the taxes without limit. It is the province of thei court to decide when the legislative department has violated con-stituional restrictions.
We will not undertake to define a county purpose, further to say we think this is not. Judges are officers of the state whose salaries are fixed by law, and paid out of the state treasury. We do not think the judges of Shelby county are any exception.
Although, owing to the size and business of the county, *513 instead of embracing ibis county with, others in a judicial circuit and chancery division, the circuits of the county constitute the fifteenth circuit, and the chancery courts the twelfth chancery division. They are no. more, special courts than others similarly situated. It is no doubt true that the people of Shelby county derive more direct benefit from the services of these judges than the people of the state at large, but this is also to some extent true in regard to the' other judges of the state with respect to, the counties in which they hold court. It is to our minds clear that "the county purpose” referred to in the constitution means some purpose peculiarly within the province, as distinguished from those general purposes left to the state at large — such, for instance, as for building bridges, courthouses, jails, taking care of the poor, making public roads, etc.
It is true some of these county purposes, such as building courthouses and jails inures equally to the benefit of the state, but it is well understood that these things are provided for by the county. We think that the purpose cannot, in the sense of the constitution, be -both a state and county purpose. It must be opie or the other. It is either the province of the state or county to pay the salary of the judges, but not the business of both. If the county of Shelby pays her own judges, the other counties ought to do the same, but to require that county to pay the salaries, or any part of the salaries [of the judges] holding her courts, and at the same time compel the people of the county to bear their part of the paying all the other judges of the state, as woidd be, the result would be.' unjust. It may be said the county consents, but this is not so unless the county court has the power to bind the people by its action in this regard, which we think it had not.
But, aside from all this, we cannot see why another provision of the constitution is not violated — that is, against *514 increasing the salaries of judges during the time for which they are elected.
These judges, or four of them, were elected and qualified before any action of the county court in regard to their salaries. Their salaries, as then fixed by law, was $2,500. When, and how was it increased? It seems to us clear that if it was ever increased to $4,500, it was when the county court made the allowance of $2,000, which was during the term for which they were elected. Manifestly, if the county court had never taken this action, it could never have been held that the salaries of these judges was $4,500. As has already been said, we do not think this can be avoided upon the ground that the law fixed $4,500 as the salary to take effect upon the condition that the county court made the allowance. This sort of ingenuity, if allowed to prevail, would, we think, be sufficient tu meet and overcome almost any objection.
The abject of this clause of the constitution against increasing or diminishing the salaries of the judges during the time for which they are elected was intended to make them independent — above the. temptation of resorting to any device inconsistent with their official duty to> have their salaries increased, and beyond the danger of being intimidated by a fear of having their salaries reduced. Mr. Story, on the subject, quotes from the Federalist as follows: “Next to permanency in office, nothing can contribute more to the independence of the judges than a fixed provision for their support. In the general course of human nature, a power over a man’s subsistence amounts to a power over his will.” Story on the Const., sec. 1629. After these judges came into office, they were dependent upon the county court, composed of all the justices of the county, for an increase of their salaries, and the act by which they are to get the increase, if at all, occurred during their term, and it seems to us clear that the spirit as *515 well as tbe very letter of tbis provision of tb© constitution would be violated by tbis increase of salary.
With regard to Chancellor Walker, be was elected subsequently, but, as we. understand tbe record, at tbe time of bis election tbe allowance bad been rescinded, and was, after bis election, again adopted by tbe court, so- that tbe same reasons apply. It seems to us, at most, that tbis allowance by tbe county court was but voluntary, and made after tbe election- of tbe judges, and might certainly be rescinded during tbe term. In regard to- Judge Nay, of tbe probate court, bis case stands upon a somewhat different ground. The court and office were created subsequent to tbe act of 1869, by tbe act of June 24, 1870 [acts 1870, cb. 86. See Shannon’s Code, sec. 387], and, although bis salary is paid by the county, yet tbe act fixes bis salary at tbe same as tbe judges and chancellors of Shelby county, which, in our view, is $2,500. See T. & S. Statutes, 316b.
"Recognizing, as we do-, tbe meritorious claims of these judges to a just compensation, and appreciating the peculiar circumstances by which they are surrounded, a salary of $2,500 in a city like Memphis, being much less adequate than the same amount in other portions of the state, yet, in our opinion, the relief now asked for cannot be granted without violating constitutional provisions of the highest importance.
The judgment will be according to this opinion.