J. J. L. McCULLERS v. THE BOARD OF COMMISSIONERS OF WAKE COUNTY.

(Filed 21 December, 1911.)

1. Health—County Superintendent —Vacancy—Appointment—Interpretation of Statute.

It is the intent of section 9, chapter 62, Public Laws of 1911, that the office of the county superintendent of health should not remain vacant, and when the county board of health has appointed such an officer, who refuses to qualify, and the office thus remains vacant for two calendar months, the Secretary of the State Board of Health may make a valid appointment of one to fill the vacancy.

2. Same—Added Duties—Two Offices—Constitutional Law.

Section 9, chapter 62, Public Laws of 1911, constituting the county board of health of the chairman of the board of county commissioners, the mayor of the county town, etc., the county superintendent of schools, and two physicians to be selected by these two officials, is not repugnant to Article XIV, sec. 7, of the State Constitution, which forbids the holding of two offices by one man at the same time, but simply adds further duties to the offices already created, which expires with the term of office of each.

3. Same—Officers Ex Officio—Terms of Office.

The provisions of section 9, chapter 62, Public Laws of 1911, that "the term of office of the members of the county board of health shall terminate" at certain specified times, does not relate

to the terms of the *ex officio* officers, but to the term of office of the physicians appointed by them, the terms of the *ex officio* members expiring on the dates already prescribed for their respective offices.

4. Health—County Superintendent—Vacancy—Appointment — Compensation—Interpretation of Statutes—Mandamus.

The right of one appointed by the Secretary of the State Board of Health to fill a vacancy in the office of the county superintendent of health for two months is not affected by the question of whether the compensation has been fixed by the secretary "in proportion to the salaries paid by other counties for the same service, etc.," for it is required that the board of county commissioners approve the expenditure and pass upon its reasonableness, and upon their failure to do so mandamus will lie to compel them in good faith to pass upon it and in the exercise of a sound judgment say whether or not the compensation for the services as fixed are warranted by the statute. Public Laws 1911, ch. 62, sec. 9.

5. Health—County Superintendent—Vacancy—Board's Appointee—Colorable Title—Quo Warranto.

The county board of commissioners having failed for two months to fill a vacancy in the office of county superintendent of health, one was appointed by the Secretary of the State Board of Health, whom the county refused to recognize, and engaged another person to attend to his duties: *Held*, the appointee of the board of commissioners had not a colorable title to the office, and the remedy of the appointee of the secretary was not by *quo warranto*.

Appeal from *Peebles, J.,* at October Term, 1911 of Wake.

This is a proceeding for mandamus to compel the defendant board to admit plaintiff to the office of Superintendent of Health of Wake County and to compel the said board to audit his accounts for services.

The judgment was rendered denying the relief prayed and dismissing the proceedings.

This cause coming on to be heard by me in chambers at Raleigh, Thursday and Friday, November 23 and 24, 1911. After hearing complaint, answer, affidavits, and argument of counsel on both sides, by consent of both sides I took the papers with

McCullers v. Commissioners.

me in order to give the matter further consideration. Having given the matter further consideration, I render the following judgment:

1. I find and hold that the pleadings raise no issue of fact requiring the intervention of a jury, and I therefore overrule the defendant's motion for a trial by jury. To this ruling defendants except.

2. I find that the facts contained in sections 1 to 8 of complaint, both included, are true.

3. It appearing from the complaint that the county board of health was organized as is required by section 9, chapter 62 of the Public Laws of 1911, and elected J. J. L. McCullers county superintendent of health, that the contingency upon which W. S. Rankin as Secretary of State Board of Health was authorized to act never happened, and the appointment of plaintiff by said Rankin was void. I also find and hold that said Rankin did not fix the fees as is directed in section 9 of said chapter 62.

4. Article XIV, sec. 7, of State Constitution, forbids the holding of two offices by one man at the same time. If the act had provided that D. T. Johnson, James I. Johnson, and Z. V. Judd should constitute the Board of Health for Wake County, their acceptance of said office would have rendered vacant the office of chairman of the board of county commissioners, office of Mayor of Raleigh, and office of Superintendent of Public Schools for Wake County. The General Assembly seems to have linked the office of Superintendent of the Board of Health for Wake County with the other three offices and made them inseparable, and for that reason I think and hold that section 9 of Public Laws of 1911, chapter 62, is unconstitutional and void.

5. I find the facts stated in section 11 of the answer to be true. I hold that Dr. R. S. Stevens is not an usurper, but is in the office of superintendent of health for Wake under color of title and is a *de facto* officer and cannot be ousted without a day in court, and hence I hold that mandamus is not the proper remedy. And I therefore dismiss these proceedings at the costs of the plaintiff, to be taxed by the clerk.

This December 1, 1911.                R. B. Peebles,
*Judge Holding Courts of Sixth District.*

From the said judgment plaintiff appealed.

*Aycock & Winston and Bart'M. Gatling for plaintiff.*
*B. C. Beckwith and R. N. Simms for defendant.*

BROWN, J. The plaintiff derives his title to the office of Superintendent of Health of Wake County by appointment of the Secretary of the State Board of Health, under chapter 62, sec. 9, Public Laws of 1911, which provides that if the county board of health of any county shall fail to elect a county superintendent of health within two calendar months of the time fixed by the statute when such election shall take place, the said secretary of the State board shall appoint.

The defendant board of commissioners passed a resolution undertaking to appoint a superintendent of health and to fix his salary. In consequence of such conflict between the two boards and the failure to fix his compensation, the plaintiff appeared before the board of health at its next meeting and declined to qualify as Superintendent of Health for Wake County. The board of health having failed to elect a superintendent for more than two calendar months, the secretary of the State board, W. S. Rankin, on 17 July, 1911, appointed plaintiff the superintendent of health and quarantine officer for Wake County and fixed his fees and compensation, claiming to have done so in accordance with sections 9 and 16 of said act. The plaintiff qualified as such and the defendant board declined to recognize him and to pass on, audit, and approve his bill for fees, as required by section 9. His Honor found the facts as stated in sections 1 to 8, inclusive, of the complaint to be true, but it is unnecessary to state them more fully.

1. It is contended that the contingency had not arisen when the secretary could lawfully appoint. The statute requires the board of health to meet and elect on the second Monday in May, 1911, and thereafter on the second Monday of January in the odd years of the calendar. A majority of the board of health voted for plaintiff, but he refused to qualify. It was the duty of said board to at once elect another person. This it failed to do, so that the office remained vacant for more than two months up to the time the State secretary made the appointment. We think the true intent and meaning of the statute is to give such appointment to the State secretary when the board of health for

any reason permits the office to remain vacant for two calendar months from the date fixed by the statute, in this case the second Monday in May.

The public interest requires that this particular office shall have an incumbent to discharge its duties, and the evident intention of the General Assembly was to prevent the office being unfilled for a longer period than the time named. We think the learned counsel for the defendants place a too restricted construction upon the meaning and purport of the words "shall fail to elect" as used in the statute. We think the General Assembly meant the choosing and induction into office of a superintendent of health within the two calendar months. *S. v. Wilroy,* 10 Ire., 329. If this were not so, then a hostile board of health could keep the office vacant by electing a person who would not qualify and the purpose of the General Assembly be entirely defeated.

2. But the real controversy in this case, which has been argued with much force by counsel on both sides, is the constitutionality of section 9 of the act.

The power of the secretary of the State board to make the appointment is conferred by said section, and if it is void *in toto,* then it is contended that plaintiff's title to the office fails. The learned judge of the Superior Court took this view and in his judgment expressed it in these words:

"Article XIV, sec. 7, of State Constitution forbids the holding of two offices by one man at the same time. If the act had provided that D. T. Johnson, James I. Johnson, and Z. V. Judd should constitute the Board of Health for Wake County, their acceptance of said office would have rendered vacant the office of chairman of the board of county commissioners, office of Mayor of Raleigh, and office of Superintendent of Public Schools for Wake County. The General Assembly seems to have linked the office of Superintendent of the Board of Health for Wake County with the other three offices and made them inseparable, and for that reason I think and hold that section 9 of Public Laws of 1911, chapter 62, is unconstitutional and void."

It appears that the persons named above are respectively Chairman of the Board of Commissioners of Wake County,

Mayor of Raleigh, and County Superintendent of Schools for Wake County. Chapter 62, Laws of 1911, appears to be a comprehensive revisal of all preceding laws. It covers the entire subject of public health, both State and county. It first provides for the establishment of a North Carolina Board of Health, which is to be made up by the election by the Medical Society of North Carolina of four members, and by the appointment of the Governor of five. Section 9 constitutes the county board of health of the chairman of the board of commissioners, the mayor of the county town, and when there is no mayor, the clerk of the Superior Court, the county superintendent of schools, together with two physicians to be elected by those three public officials.

We are unable to concur in the conclusion that the statute is violative of Article XIV, sec. 7, of our State Constitution. It is not a case where one person holds two offices at the same time, but rather the case where the duties of a member of the county board of health are to be performed *ex officio* by the chairman of the board of commissioners, the mayor, and the superintendent of schools. These duties cannot be discharged by the individuals named in his Honor's judgment any longer than during the period they hold the offices of chairman, mayor, and superintendent. The right to discharge such duties is not conferred upon them as individuals, but is a part of the duties of the one office already held by each.

The case of *Barnhill v. Thompson*, 122 N. C., 493, does not sustain the contention of the defendants. The facts in that case show that the Board of Education of Bladen County was elected by the board of commissioners of said county, the clerk of the Superior Court and the register of deeds, under the existing law, sitting with them. This body elected the defendant Thompson, who was a member of the board of county commissioners, a member of the board of education, and he undertook to exercise the duties of both offices. This Court held that he was ineligible to discharge the duties of county commissioner; that when he accepted the second office he thereby vacated the one he already held. His right to act as a member of the board of education was not questioned. In the case at bar the persons named in

the judgment have not been elected or appointed to any other office, but the added duties of the county board of health have been placed upon the offices they already held, and as long as they retain such offices they must discharge such duties, and when they vacate such offices their successors must continue to perform them. By discharging the duties of the board of health and acting as members of that board, those gentlemen did not vacate the offices they already held, for the moment they resigned or vacated such offices they at once became ineligible to continue as members of the board of health. For this reason they could have no right to elect which office they would take, the office they held or membership on the board of health.

This legislation is not novel in North Carolina—nor, indeed, in the other States of the Union. In 1901 the Legislature passed a similar act—section 4444 of the Revisal. That act provides that two physicians shall be selected, one by the chairman of the board of county commissioners and one by the mayor of the county town, who, together with the board of commissioners, shall constitute the county sanitary committee, of which committee the chairman of the board of county commissioners shall be *ex officio* chairman.

We also have the familiar case of the Governor, who is made by law a trustee of the University of the State and chairman of the board and is required to perform these duties and also act as chairman of the executive committee of the trustees. Similar legislation is to be found in other States having a constitutional provision similar to ours. In West Virginia the law requires the Governor, Auditor, Treasurer, Superintendent of Schools, and Attorney-General to serve on the Board of Public Works, and prescribes the duties of said board. The Court of Appeals in an elaborate opinion held the act valid, saying, in substance, it simply prescribes additional powers and duties to be performed by officers already elected by the people, and that it does not amount to an appointment to an office created by law, but that it only amounts to requiring the officers of the executive department, by virtue of their respective offices to which they have been elected by the people, to act as members of the Board of Public Works; that it in substance simply annexes additional

powers and duties to their respective offices. The Court goes on to say "that it is a time-honored usage in Virginia, and continued in West Virginia, to cause certain duties which might have been assigned to officers specially appointed or elected for the purpose, to be performed by officers already appointed for general service." *Bridges v. Shallcross,* 6 W. Va., 578, citing *Wales v. Belcher,* 20 Mass., 508. The question is considered by the Court of Appeals of Virginia in *Sharpe v. Robertson,* 5 Gratt., 518. In that case certain duties were assigned the circuit judges to be performed in the Court of Appeals and special compensation fixed by the General Assembly. *Judge Baldwin,* speaking for the Court, says: "But the act in question creates no new judicial offices and appoints no additional judges, but merely attaches new duties for offices existing, to be performed by the incumbents, within the constitutional power of the Legislature." The subject is discussed by the Supreme Court of Texas in *Powell v. Wilson,* 16 Tex., p. 59, and the views we have expressed herein are fully supported. The Court says: "It cannot be doubted that it is competent for the Legislature to create an office, which shall be that of a substitute, or mere auxiliary to another, the duties of which shall commence and consist in performing the duties of the principal office." The subject is elaborately discussed by the Supreme Court of Florida in *Wilkins v. Conners,* 27 Fla., 329, and it is held that the statute making it the duty of the Sheriff of Escambia County to act as City Marshal of Pensacola is not obnoxious to the Constitution of that State, declaring that "no person shall hold or perform the functions of more than one office under the government of this State at the same time." In Louisiana the same view is taken in *S. v. Somnie,* 33 La. Ann., 237, where it is held that the act providing that the clerk of the district court shall be *ex officio* member of the jury commission does not confer an additional office upon the incumbent of the clerk's office in violation of the constitutional restriction.

We could multiply authorities in support of these views, but deem it unnecessary.

It is true, as contended, that section 9 uses this expression, "the term of office of members of the county board of health

shall terminate on the first Monday in January in the odd years of the calendar, and while on duty they shall receive $4 per diem, to be paid by the county." The former law declared their term of office to be coterminus with that of the commissioners with whom they serve, and when on duty they shall receive the same compensation as is received by county commissioners. Evidently the language of the new act in reference to term of office applies only to the two physicians who are chosen as members of the county board of health by the chairman of the board of county commissioners, by the mayor, and by the superintendent of schools. The change in the verbiage is due to the fact that there is a difference in the terms of the *ex officio* members of the county board of health. The county superintendent of schools goes out of office on the first Monday in July of each year; the mayor of the county town, as a rule, goes out in May or June, while the terms of the county commissioners expire in December. It evidently was not intended to either leave a vacancy in the health board or to shorten or lengthen the terms of the *ex officio* members. The person holding the office of county commissioner when his successor is elected as chairman of the board of county commissioners on the first Monday in December would go off the county board of health and the succeeding chairman of the board of county commissioners would *eo instanti* become a member of the county board of health. The same is true of the mayor and of the superintendent of public schools.

Our conclusion being that the entire section of the act is a valid exercise of legislative power, it is unnecessary to discuss the powers of the health board as a *de facto* organization with a colorable right to discharge the duties imposed upon it.

3. It is contended that the secretary of the State board did not fix the fees as required by the act. We fail to see how this affects the plaintiff's title to the office. It is plain that the secretary undertook to fix the fees to which plaintiff would be entitled, but whether he observed the standard laid down by the statute is not for us to determine in this proceeding. The statute, section 9, declares that the compensation of the superintendent of health for the county, when fixed by said secretary, shall be "in

proportion to the salaries paid by other counties for the same service, having in view the amount of taxes collected by said county."

And the same section declares that "all expenditures shall be approved by the board of county commissioners before being paid."

It thus becomes the duty of the board of commissioners to·pass on and audit the plaintiff's accounts for services and to determine whether they are reasonable and within the bounds fixed by the statute. The approval of the defendant board is necessary to the payment of plaintiff's account, and while the courts will not undertake to compel the county commissioners to approve them, they will require them to consider the account and to pass on it in good faith in the exercise of a.sound judgment as to whether or not the services as charged are warranted by the statute.

4. It is contended that mandamus is not the proper remedy, but that *quo warranto* is. This contention is based upon the theory that one Dr. Stevens is in possession of the office of "County Superintendent of Health" for Wake County and exercising its functions. We find nothing in the record that gives Dr. Stevens even a colorable title to the office or indicates that he is in possession of it. The resolution of the county commissioners does not purport to elect him superintendent of health or even to induct him into any office established by law. If he is in the service of the county commissioners under their resolution to employ a "county physician" (the term used in the resolution), then he is merely a contract physician performing services which should be performed by the plaintiff, and is not exercising the functions of a public office. He has not even a colorable title to the office of "County Superintendent of Health." He is not a party to this proceeding and was very properly omitted.

That mandamus is a proper remedy to enforce plaintiff's demands is established by abundant authority. *Moore v. Jones,* 76 N. C., 185; *Doyle v. Raleigh,* 89 N. C., 133; *Lyon v. Commissioners,* 120 N. C., 239; *Koonce v. Commissioners,* 106 N. C., 192.

We assume that when this opinion is handed down it will be unnecessary for plaintiff to sue out the writ, but in case it is, the plaintiff may apply for a peremptory writ of mandamus to the judge of the Superior Court residing in or holding the courts of the Sixth Judicial District.

The costs of this appeal will be paid by defendant board of commissioners.

Reversed.