HANCOCK *v.* DAVIDSON COUNTY *et al.*

(*Jackson*, April Term, 1937.)

Opinion filed May 1, 1937.

422

CHARLES L. CORNELIUS, W. M. FUQUA, and W. N. MC-KINNEY, all of Nashville, for appellant.

THOMAS H. MALONE, CHARLES P. HATCHER, HORACE OSMENT, ALBERT G. EWING, and ED. T. SEAY, all of Nashville, for appellees.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

The bill herein assails the validity of an act of the Legislature, chapter 12 of the Private Acts of 1937. A demurrer to the bill was sustained and the complainant appealed.

The statute in question creates a court of general sessions with three judges for Davidson County and section 2 provides that the court "is hereby vested with all the jurisdiction and shall exercise the authority conferred by the Legislature upon justices of the peace in civil and criminal cases, suits and actions; and the justices of the peace of Davidson County, Tennessee, are hereby divested of all such jurisdiction and authority. The authority of said justices of the peace in their capacity as members of the quarterly court or in the performance of the rites of matrimony is in nowise affected by this Act."

It was enacted that Davidson County should provide for the equipment and maintenance of the court and that Davidson County should pay each of the judges a salary of $4,000 per annum "out of the ordinary funds of the county."

Other provisions of the act will be noticed in the course of the opinion.

The first proposition of the appellant is that the said act of 1937 violates section 29 of article 2 of the Constitution of Tennessee because it effects the levy of a tax by Davidson County to pay salaries of public officers, who are strictly state officers, and who perform no services for the county aside from the services rendered by them as state officers.

This proposition rests on the premise that in the exercise of the jurisdiction and authority transferred from them by this statute to the court of general sessions jus-

tices of the peace acted solely as judicial officers and therefore as state officers.

In our opinion this premise is unsound.

The court of general sessions, under the act before us, will render the identical services rendered by justices of the peace "in civil and criminal cases, suits and actions." If justices of the peace rendered services "in civil and criminal cases, suits and actions" for which they were properly compensated by Davidson County, it follows that the court of general sessions may be compensated by the county for rendering the same services to said county.

The services of justices of the peace in criminal cases have always been, in a large measure, recognized as services to the county and the costs of such services made chargeable to the county by statute. Code, section 12228 et seq.; Code, section 12249. These statutes include fees for services rendered by justices of the peace that are strictly judicial in their nature.

Some of such services, judicial in nature, seem to be exclusively for the benefit of the county. For instance, the jurisdiction of justices of the peace in bastardy cases, by the very terms of the statute, is conferred and their duties prescribed in order "to keep such child from being chargeable on the county." Code, sections 11936, 11937 et seq.

It is to be observed furthermore that the act of 1937 transfers from justices of the peace not only their jurisdiction of civil and criminal cases, suits, and actions, but transfers "the authority" of justices of the peace in civil and criminal cases, suits, and actions.

Much of the authority and much of the duty of justices of the peace, at least in criminal cases, suits, and actions,

is ministerial in its nature rather than judicial. One of the most important functions of a justice of the peace is the conservation of the peace, including the preliminary hearing of criminal charges and the commitment of offenders rather than the trial of offenders upon such charges.

Blackstone (vol. 1, 349) gives an interesting though brief account of the origin and development of the office of justice of the peace and shows that in the beginning such officers were mere conservators of the peace, their judicial powers being conferred by later statutes. In this connection the author points out that the King was the principal conservator of the peace and that the King and certain high functionaries were conservators of the peace throughout the realm, but that justices of the peace were created for the conservation of the peace in their respective counties.

The latter distinction in the scope of the authority of justices of the peace and other magistrates is preserved in the statutes of Tennessee.

By Code, section 11428 "The judges of the supreme, chancery, circuit, and criminal courts throughout the state, judges of the county courts, and justices of the peace in their respective counties, . . . are magistrates within the meaning of this and the following titles, and may require persons to give security for good behavior, and to keep the peace in the manner provided in this chapter."

By Code, section 11514 the same officials mentioned in the section above quoted are declared to be magistrates, and Code, section 11517 provides that "magistrates are authorized within their jurisdiction, to issue warrants of arrest." Section 11529 provides that when a warrant

is "issued by a judge of the supreme, circuit, or criminal court, it may be executed in any county of the state; and such judge may empower, by special direction embodied in the warrant, any suitable person, by name, to execute such warrant anywhere in the state."

So while decisions of this court are to the effect that a justice of the peace, in the exercise of strictly judicial functions, is a state officer, it is plain from our statutes, as well as from adopted English statutes, that, in the exercise of other functions, the justice of the peace is strictly a county officer. In the exercise of still other functions, he is primarily a county officer, and the same must be said of these newly created functionaries who succeed to the jurisdiction and authority of justices of the peace in criminal cases, suits, and actions.

The appellant relies chiefly upon *Shelby County* v. *Six Judges*, 3 Shan. Cas., 508, and the *Judges' Salary Cases*, 110 Tenn., 370, 75 S. W., 1061, 1065. These cases declared invalid certain statutes by which the quarterly county court of Shelby county was authorized to supplement the salaries provided by the state for judges and chancellors.

The statutes were held to violate section 7 of article 6 of the Constitution providing that "The Judges of the Supreme or Inferior Courts shall, at stated times, receive a compensation for their services, to be ascertained by law, which shall not be increased or diminished during the time for which they are elected. They shall not be allowed any fees or perquisites of office, nor hold any office of trust or profit under this State or the United States." Obviously, a justice of the peace is not within the purview of this section of the Constitution since he has always been entitled to "fees or perquisites of office."

The statutes were further held to violate the implied prohibition against the levy of a tax for any but a county purpose contained in section 29 of article 2 of the Constitution providing "The General Assembly shall have power to authorize the several counties and incorporated towns in this State, to impose taxes for county and corporation purposes respectively, in such manner as shall be prescribed by law."

It is the latter section of the Constitution which the act before us is said to transgress and our cases are uniform in holding that a county tax cannot be levied for a purpose not a county purpose.

It is now well settled, especially by later decisions of this court, that a particular objective may be a county purpose and a state purpose both. In other words, a common purpose. The state may levy a tax for such common purpose and the county may be authorized to levy a tax for such common purpose. *Ransom* v. *Rutherford County*, 123 Tenn., 1, 130 S. W., 1057, Ann. Cas., 1912B, 1356; *Hill* v. *Roberts*, 142 Tenn., 215, 217 S. W., 826. This, indeed, is recognized in the Judges' Salary Cases, *supra*, but it was there ruled that compensation of the judges involved was not a common purpose. That such judges held "state offices created and existing for distinctive and essentially state purposes."

In addition to his political functions, as a member of the quarterly county court, a justice of the peace functions for other county purposes. He does not function for distinctive and essentially state purposes. No more will the court of general sessions. The court of general sessions will immediately and primarily conserve the peace of Davidson County. As a conservator, the court will prevent breaches of the peace, arrest and commit

for same, not try for same. In this role the court will serve a county purpose just as the sheriff.

Although the decision was not based on that ground, *Davidson County* v. *Kirkpatrick*, 150 Tenn., 546, 266 S. W., 107, seems to recognize fully the authority of a county to supplement the compensation provided by the state for the District Attorney-General. This on the ground that such official renders many services, primarily at least, for the benefit of the county.

We are of opinion that the establishment and maintenance of this court of general sessions will serve a purpose common to the state and to Davidson County and that Davidson County was properly authorized to tax for this purpose. This being so, the proportion in which Davidson County and the state shall contribute to the common purpose was a matter for the Legislature. It no doubt appeared to the Legislature that Davidson County would derive sufficient financial benefit from the workings of the court to make it equitable for Davidson County to bear the expense of the court. This was a matter for the discretion of the Legislature.

The second proposition of the appellant is that the act of 1937 violates section 8 of article 1 of the Constitution and section 8 of article 11 of the Constitution in that it suspends the general law providing for the compensation of clerks for the benefit of the clerk of the circuit court of Davidson County. In the same connection it is said that the act violates section 26 of article 2 of the Constitution in that it confers upon the circuit court clerk of Davidson County two lucrative offices. These two objections to the statute may be considered together.

Section 15 of the act of 1937 contains the following:

"That the Clerk of the Circuit Court of Davidson County shall act as Clerk of said Court of General Sessions, and when acting as Clerk of said Court, shall be designated 'Clerk of Court of General Sessions of Davidson County.' Said Clerk is hereby authorized to perform the duties of the respective parts of said court. The fees, commissions and emoluments of said Clerk of the Court of General Sessions shall constitute a part of the fees, commissions and emoluments of the office of the Clerk of the Circuit Court of Davidson County, Tennessee. The Clerk of the Circuit Court shall receive no additional compensation for his services; however, such deputies and assistants as may be necessary for the proper operation and administration of the duties of said office shall be appointed and compensated in the same manner as now provided for the appointment and compensation of deputy circuit court clerks of Davidson County as provided by law.''

Under section 10727 of the Code the clerk of the circuit court of Davidson County is entitled to a maximum compensation of $6,000 per annum. This he may receive provided his fees justify. The bill avers that heretofore the fees of the office have not permitted this clerk to retain the maximum compensation allowed and that, under section 15 of the act of 1937, he may supplement the fees received as circuit court clerk by the fees received as clerk of the court of general sessions and thus eke out his compensation to the maximum. In this way, by giving to this clerk an additional source of revenue, it is urged that an unlawful discrimination is made in his favor against other circuit court clerks throughout the state.

We see nothing unlawful in this. The distinction between this clerk and other circuit court clerks throughout the state rests upon a sound basis. Additional duties are imposed upon the circuit court clerk in Davidson County and for the performance of these duties it is not improper that he have some additional advantage over other circuit court clerks.

■ ■ As to the supposed violation of section 26 of article 2 of the Constitution, we do not think the act of 1937 confers an additional office upon the circuit court clerk of Davidson County. The act merely makes him *ex officio* clerk of the court of general sessions and it is almost everywhere a settled rule that a statute conferring additional duties on a public officer *ex officio* does not have the effect of appointing him to a second office. *Mc-Cullers* v. *Board of Commissioners*, 158 N. C., 75, 73 S. E., 816, Ann. Cas., 1913D, 507; *Attorney-General ex rel. Wilkins* v. *Connors*, 27 Fla., 329, 9 So., 7; *Tayloe* v. *Davis*, 212 Ala., 282, 102 So., 433, 436, 40 A. L. R., 1052, and many cases collected in a Note, Ann. Cas., 1913D, 511.

■ Speaking of constitutional provisions similar to section 26 of article 2, it is said in 46 Corpus Juris, 946:

"Provisions of the character under consideration do not forbid the imposition of new duties upon an officer. Nor do they prevent the consolidation of offices and assignment of one officer to the duties of another where there is no inconsistency between the two classes of duties."

In *Tayloe* v. *Davis, supra*, the Supreme Court of Alabama considered an act which created a commission consisting of the Governor and other salaried officials of the state. For the performance of their duties on this com-

mission, these officials were to receive additional compensation. Disposing of objections made to the act, the court said:

"The members of the budget commission are not holding two offices of profit within the meaning of section 280 of the Constitution. When, in the exigencies of government, it is necessary to create and define new duties, the legislative department has the discretion to determine whether additional offices shall be created, or these duties shall be attached to and become *ex officio* duties of existing offices. The power extends to the consolidation of offices resulting in abolishing one and attaching its powers and duties to the other. It matters not that the name commission or board is given to the body created. The officers named in the budget bill could be called the Governor's counsel or cabinet when engaged in the joint duties imposed upon them by virtue of their respective offices.

"It has now been long declared by this court that for new and additional duties an incumbent of a public office may be awarded extra compensation without a violation of sections 118 or 281, forbidding an increase of salary during the term. It may be said a rule of legislative policy has grown up by the sanction of this court's construction of these sections."

In some of the decisions contained in the Note, Ann. Cas. 1913D, 511, heretofore mentioned, it was held that additional duties imposed upon an official carrying additional compensation could not be permitted under a constitutional provision forbidding an increase of the salary of that official during his term. This question, however, does not here arise since we have no such con-

stitutional provision with reference to the compensation of the circuit court clerk.

The next proposition of appellant is that sections 5 and 6 of the act of 1937 violate section 8, article 1, of the Constitution, and section 8, article 11 of the Constitution, in that they deny to litigants before the court of general sessions certain rights available to litigants elsewhere in the state and thereby make the procedural law applicable to this court unduly discriminatory.

This criticism is founded on section 5 and section 6 of the act. The former section provides that before the issuance of a warrant in a civil case the plaintiff shall execute a cost bond with good security in the sum of $25, or make a cash deposit of not less than $2.50 or more than $25 to secure costs, or take the pauper's oath. The second section provides that no appeal shall be granted from a judgment of the court of general sessions dismissing a suit or a judgment which does not exceed the amount of $50, but that such cases can only be reviewed by petition for *certiorari* granted by the circuit court.

In answer to this objection, it is sufficient to say that so far as his bill discloses the appellant here is in nowise affected by these provisions of the act of 1937. He is not a litigant in any case before the court of general sessions. He sues as a taxpayer of Davidson County to avoid the additional burden of taxation that he avers will be imposed upon him by the maintenance by said county of this court. These provisions as to civil suits will impose no burden upon the county and will impose no burden upon any taxpayer of the county.

To justify an assault upon the validity of a statute under these sections of the Constitution, the assailant must show that he is adversely affected by the alleged

discrimination. *East Tennessee & Western North Carolina Motor Transportation Co.* v. *Carden,* 167 Tenn., 416, 50 S. W. (2d), 230; *Spencer-Sturla Co.* v. *Memphis,* 155 Tenn., 70, 290 S. W., 608, citing earlier cases.

 There is no infirmity in sections 5 and 6 of the act that go to the validity of the statute as a whole. The title of the act indicates that it is one "to create and establish a court" and "to prescribe the jurisdiction thereof." Provisions regulating costs in such court and appeals from such court are entirely germane to the title. There is nothing in sections 5 and 6 that offends against section 17 of article 2 of the Constitution.

If the points here made against the act are hereafter properly urged by litigants affected, and the points should be deemed well taken, these sections of the Act could easily be elided. It is not possible to believe that the inclusion of either of the sections was a material consideration inducing the enactment of the statute. Section 5 amounts to nothing. By Code, section 10157 a justice of the peace may require a plaintiff to give security before issuing original process in a civil case. The court of general sessions, succeeding to the authority of the justice of the peace, may make a similar requirement. Section 6 of the act will only limit the right of appeal, formerly existing in cases tried before a justice, in respect to a relatively small amount of trivial litigation and we are satisfied the Legislature could not have regarded this section as important in consideration of the propriety of this measure.

 Certain other provisions of the act are put forward as beyond the caption of the act of 1937 and as therefore rendering it unconstitutional under section 17

of article 2. It would be of no profit to enter into a discussion of the details. We have considered all of them and have found nothing included in the statute not fairly foreshadowed by its title.

The question of elision did not arise in *State ex rel. Ward* v. *Murrell*, 169 Tenn., 688, 90 S. W. (2d), 945, nor in *Spurgeon* v. *Worley*, 169 Tenn., 697, 90 S. W. (2d), 948. Such a question could not have arisen in those cases for the offensive sections of the statutes therein considered were of the very essence of those enactments. Elision was suggested in *Gouge* v. *McInturff*, 169 Tenn., 678, 90 S. W. (2d), 753, and *Id.*, 170 Tenn., 72, 92 S. W. (2d), 198, to conform a statute to the one-subject clause of the Constitution, section 17 of article 2, and the court declined to perform such an operation.

There has been some intimation that a statute transferring the authority and jurisdiction of justices of the peace to another court could only be sustained if applicable to the whole state. Such an idea, however, was long ago rejected in this state. We have a number of special courts in particular counties to which the jurisdiction of the circuit in some instances, of the chancery court in other instances, of the criminal court in other instances, has been transferred. In a few instances the jurisdiction has been transferred from other courts to a special court set up for certain districts of the particular county. See *Ellis* v. *State*, 92 Tenn., 85, 20 S. W., 500; *Wilcox* v. *State*, 50 Tenn. (3 Heisk.), 110, and the note of Judge NICHOLSON to the latter case *Id.*, p. 114.

*Prescott* v. *Duncan*, 125 Tenn., 106, 137, 148 S. W., 229, very elaborately considers the constitutional prerogatives of the justice of the peace and shows that

they are very few—that his jurisdiction and powers are largely subject to the will of the Legislature.

We find no error in the decree of the chancellor and the same will be affirmed.