IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
October 23, 2012 Session

**MARVIN BERNATSKY AND PATRICIA BERNATSKY**
**v.**
**DESIGNER BATHS & KITCHENS, LLC**

**An Appeal from the Circuit Court for Shelby County**
**No. CT-006113-10      James F. Russell, Judge**

**No. W2012-00803-COA-R3-CV - Filed February 15, 2013**

DAVID R. FARMER, J., Concurring.[1]

I fully concur in Judge Kirby's well-reasoned analysis, and also agree with Judge Stafford that the word "costs" contained in the statute is ambiguous. I write separately to offer additional historical perspective and to more fully address the implications of the conclusions reached in *Jacob v. Partee*, No. W2012-00205-COA-R3-CV, 2012 WL 3249605 (Tenn. Ct. App. Aug. 10, 2012).

The holding that a surety bond in sum certain or a cash bond is sufficient to satisfy the statutory requirement is consistent in light of the historical evolution of the general sessions courts themselves. The General Assembly created general sessions courts by private acts beginning in the 1930s, and "vested [them] with all the jurisdiction and . . . authority conferred by the Legislature upon justices of the peace[.]" *Hancock v. Davidson County*, 104 S.W.2d 824, 825 (Tenn. 1937). The general sessions courts thus are derived from justice of the peace courts, and "inherited many of the justice of the peace courts' jurisdictional characteristics and limitations." *Ware v. Meharry Medical College*, 898 S.W.2d 181, 183 (Tenn. 1995). In 1959, the General Assembly transferred the jurisdiction and authority of the historical justice of the peace courts to general sessions courts, establishing a system of general sessions courts throughout the State. *Id.*; *Steinhouse v. Neal*, 723 S.W.2d 625, 626 (Tenn. 1987). The courts have long-noted that, with certain exceptions, "[t]he rules

---

[1]Judge Kirby has authorized me to state that she concurs in this concurring opinion.

1

governing procedure and appeals in General Sessions Courts are the same as those in the court of a Justice of the Peace[.]" *Spencer v. Dixie Finance Co*, 327 S.W.2d 301, 302 (Tenn. 1957)(citing *Hancock v. Davidson County*, 104 S.W.2d 824 (Tenn. 1937)). As Judge Kirby observes, general sessions courts have long been considered "the courts that 'touch elbows' with the ordinary people and provide 'justice in the small and everyday affairs of life.'" *Ware*, 898 S.W.2d at 183 (quoting Robert S. Keebler, *Our Justice of the Peace Courts—A Problem in Justice*, 9 Tenn.L.Rev. 1, 4–5 (1930) ("Keebler")).

In addition to inheriting the informality of rules and procedure of the justice of the peace courts, the general sessions courts inherited "the concern[s] about the quality of justice dispensed by the justice of the peace courts[.]" *Id.* at 184. The General Assembly thus designed safeguards "to protect litigants against erroneous judgments" that might derive from the "fragile" decisions historically generated by justice of the peace courts as a result of "(1) the courts' informal procedures, (2) the justices' lack of formal legal training, (3) the absence of a jury, (4) the high incidence of default judgments, and (5) the taint of the fee-based system for compensating justices." *Id.* Although many of these concerns are not present in contemporary general sessions courts, procedural informality remains a fundamental characteristic of the general sessions courts. *Id.* Indeed, it is this very informality that gives "ordinary people" access to the courts to seek "justice in the small and everyday affairs of life." *Id*. at 183.

The General Assembly provided a "*broad right* of appeal to the circuit court" as "[t]he principal safeguard" against concerns arising from the informality of general sessions courts. *Id.* at 184 (emphasis added). The circuit courts have "'supervisory control' over the general sessions courts." *Id.* (quoting Joseph Higgins & Arthur Crownover, Jr., Tennessee Procedure in Law Cases §§ 133, 1642 (1937)). Former section 27-503 of the Tennessee Code, the precursor to section 27-5-103, "provide[d] that before the appeal is granted the person appealing shall give a bond with good security or otherwise take the pauper's oath." *Spencer*, 327 S.W.2d at 302. The requirement of a bond with "good security" accordingly is a long-standing requirement of the process of appeal from general sessions court to circuit court.

The courts' duty when construing a statute is to ascertain and give effect to the intent of the General Assembly. *E.g., Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn.2004) (citations omitted). We have noted that "statutes must be construed 'with the saving grace of common sense.'" *State ex rel. Maner v. Leech*, 588 S.W.2d 534, 540 (Tenn. 1979). Additionally, the most important and compelling rule of statutory construction "is that the law be rendered intelligible and absurdities avoided." *Roberts v. Cahill Forge & Foundry Co.*, 184 S.W.2d 29, 31 (Tenn. 1944). The courts must avoid a construction that would defeat or frustrate the purpose of the statute or that "would work to the prejudice of

the public interest." *State ex. rel. Maner*, 588 S.W.2d at 540 (citations omitted). As Judge Kirby notes, the conclusion reached in *Jacob v Partee* is inconsistent with the General Assembly's action following *Maddock, Kenny & Associates, Inc. v. Management Assistance and Service, Inc.,* 1986 W.L. 8811 (Tenn. Ct. App. Aug. 14, 1986). It also frustrates the General Assembly's intent to provide a broad right of appeal from general sessions courts.

It is well-settled that subject matter jurisdiction cannot be waived, and that the courts may consider the question of subject matter jurisdiction *sua sponte* regardless of whether it is presented as an issue by the parties. Tennessee Rules of Appellate Procedure 13(b); *Morrow v. Bobbitt*, 943 S.W.2d 384, 392 (Tenn. Ct. App. 1996). Clearly, "'[t]he only way that a circuit court may acquire subject matter jurisdiction over a case litigated in a general sessions court is through the timely perfection of a *de novo* appeal.'" *Carter v. Batts*, 373 S.W.3d 547, 551 (Tenn. Ct. App. 2011)(quoting *Univ. Partners Dev. v. Bliss*, No. M2008–00020–COA–R3–CV, 2009 WL 112571, at *3 (Tenn. Ct. App. Jan. 14, 2009) (citing *Discover Bank v. McCullough*, No. M2006–01272–COA–R3–CV, 2008 WL 245976, at *8 (Tenn. Ct. App. Jan. 29, 2008)). Additionally, the appealing party is required to file a notice of appeal and pay a cost bond within ten days of entry of the general sessions court judgment in order to timely perfect an appeal. *Id.* (citation omitted). The courts have long held that "'[t]he requirement of a bond in order to perfect an appeal from an inferior court to the circuit court is not a formality. The appeal is not perfected without it.'" *Id.* (quoting *City of Red Boiling Springs v. Whitley*, 777 S.W.2d 706, 708 (Tenn. Ct. App.1989)(citing *Chapman v. Howard*, 71 Tenn. 363 (1879))). However, since the creation of the general sessions courts by the General Assembly beginning in the early part of the last century, no court of this State has held that a bond in an unlimited amount was required to perfect an appeal from general sessions court to circuit court, or that the circuit court lacked jurisdiction to adjudicate an appeal in the absence of an unlimited bond, until a different panel of this Court so held in *Jacob v. Partee. See, e.g., Brown v. Roland*, 357 S.W.3d 614 (Tenn. 2012); *Crowley v. Thomas,* 343 S.W.3d (Tenn. 2011); *Love v. College Level Assessment Servs, Inc.*, 928 S.W.2d 36 (Tenn. 1996); *Ware v. Meharry Medical College*, 898 S.W.2d 181 (Tenn. 1995); *Newport Housing Auth. v. Ballard*, 839 S.W.2d 86 (Tenn. 1992); *Steinhouse v. Neal,* 723 S.W.2d 625 (Tenn. 1987); *Spencer v. Dixie Finance Co.*, 327 S.W.2d 301 (Tenn. 1959); *Carter v. Batts*, 373 S.W.3d 547 (Tenn. Ct. App. 2011); *Johnson v. Ragsdale*, 158 S.W.3d 426 (Tenn. Ct. App. 2004); *Gill v. State Farm Ins. Co.*, 558 S.W.2d 350 (Tenn. Ct. App. 1997); *City of Red Boiling Springs v. Whitley*, 777 S.W.2d 706 (Tenn. Ct. App. 1989); *Shelton Dental Assoc v. LaFevre*, 767 S.W.2d 665 (Tenn. Ct. App. 1989).

The supreme court has observed,

It may be argued that some appeal bonds can be so costly as to deny equal

protection to poorer litigants by effectively foreclosing avenues of obtaining a jury trial if one is desired. The appeal bond requirements of T.C.A. § 29–18–128 through § 29–18–130 do not impose any unreasonable or irrational burdens upon parties seeking to appeal an adverse decision from the general sessions court. Moreover, the right to appeal and the concomitant right to a trial by jury is preserved even for those litigants without financial resources. As this Court has long recognized, if a party "is willing to surrender possession pending the litigation in the higher courts, there is a remedy by appeal which may be obtained on the pauper oath."

*Newport Housing Auth. v. Ballard*, 839 S.W.2d 86, 89-90 (Tenn. 1992) (quoting *Ammons v. Coker*, 124 Tenn. 676, 681, 139 S.W. 732, 733 (1911)).  As Judge Kirby observes, the construction of the bond requirement contained in section 27-5-103 as construed in *Jacob v. Partee*  essentially forecloses the right of appeal by litigants who cannot be considered paupers but who would not have access to the resources necessary to post a bond in an unlimited amount.  Additionally, Tennessee Code Annotated § 27-5-108 "establish[es] a uniform period of ten (10) days in which any such appeal may be perfected in any county in Tennessee." *Steinhouse v. Neal*, 723 S.W.2d 625, 627 (Tenn. 1987)(quoting Acts 1959, ch. 10, § 4).  Thus, the appeal bond necessary to perfect an appeal must be obtained within a brief ten day period.  As a practical matter, it is difficult to conceive how a litigant would secure an unlimited bond within a ten day period.  Finally, a *de novo* appeal from the general sessions court to circuit court "provides the parties an entirely new trial, as if no other trial had occurred and as if the case had originated in the circuit court." *Ware v. Meharry Medical College*, 898 S.W.2d 181, 184 (Tenn. 1995)(citations omitted).  Accordingly, on appeal to circuit court, parties may amend their complaints; add additional parties; add new causes of action; add counterclaims, cross-claims or third-party claims; add new defenses; increase their demand for damages. *Id.* at 185 (citations and footnotes omitted).  The parties may engage in discovery, litigate various motions, and, in short, engage in protracted litigation. *See Brown v. Roland*, 357 S.W.2d 614 (Tenn. 2012).  Thus, the conclusion reached in *Jacob v. Partee* would require a litigant to secure a bond in an unlimited amount to secure litigation costs that cannot be estimated when the appeal bond is filed.  No such surety is required when an action is originally commenced in circuit court.  Indeed, it is exceedingly difficult to conceive that a surety would post a bond in an unlimited and un-estimable amount.  To require such a bond effectively forecloses the right to appeal.

I turn finally to the difficulty posed by *Jacob v. Partee*.  As Judge Stafford observes, different panels of this Court have reached divergent results on this issue.  I additionally note that we have sometimes opined that the denial of an appeal by the supreme court may be viewed as an adoption of our holding "by implication." *Lipford v. First Family Fin. Servs, Inc.*, No. W2003-01208-COA-R3-CV, 2004 WL 948645 (Tenn. Ct. App. April 29, 2004).

However, notwithstanding the supreme court's denial of an appeal in *Jocob v. Partee*, the issue now before us is of far too great importance, and poses far too wide-reaching implications for both current litigants and litigants in prior cases on appeal from general sessions courts throughout the State, to rely on an adoption by implication by reason of the supreme court's inaction. The denial of permission to appeal in both *Jacob v. Partee* and *Carter v. Batts*, which arguably reach opposite conclusions, is somewhat perplexing. I am sensitive, moreover, to the dilemma posed to litigants and trial courts by the opposite conclusions reached here and in *Jacob v. Partee*. Although *Jacob v. Partee* and its progeny are respectfully overruled to the extent to which they diverge from our holding here, I urge the supreme court and the General Assembly to address this issue at the earliest possible opportunity to resolve the matter with finality.


_____
DAVID R. FARMER, JUDGE